## Douglas, Appellant, *v.* Converse.

*Negligence—Horses—Spectators at polo game—Trampling of spectators by horses—Case for jury.*

1. There is in the game of polo the element of risk, and both players and bystanders assume the chance of the ordinary dangers incident to the game in participating in and witnessing the contest.

Spectators, however, do not assume a risk which results from reckless playing, or the failure of a player to control and guide a horse so as to avoid accident when such control is reasonably possible. They have a right to assume that the game will be played within boundaries, and that players will not voluntarily or without reasonable effort upon their part to prevent, permit their horses to leave the field limits.

2. If in a polo game a horse becomes unmanageable, gets beyond control of the rider and rushes beyond the field boundaries, and injury results to an onlooker, no negligence can be charged to the rider.

*Evidence—Opinion evidence.*

3. In an action by a spectator at a polo game to recover damages from one of the players resulting from injuries received by the player's horse getting beyond the boundaries of the field, where the plaintiff was standing, where a witness testifies that the player had no control over his horse, the value or worth of the opinion was for the jury, whose province it was under all the evidence to say whether the horse became unmanageable.

Argued Jan. 21, 1915. Appeals, Nos. 226 and 227, Jan. T., 1914, by plaintiffs, from judgment of C. P. No. 5, Philadelphia Co., Dec. T., 1909, No. 2181, refusing to take off nonsuit in case of John L. Douglas, Jr., by his next friend and father, John L. Douglas, and John L. Douglas in his own right, v. John W. Converse. Before MESTREZAT, POTTER, ELKIN, MOSCHZISKER and FRAZER, JJ. Reversed.

Trespass to recover damages for personal injuries. Before STAAKE, J.

The opinion of the Supreme Court states the facts.

The trial judge entered a compulsory nonsuit which the court in banc subsequently refused to take off. Plaintiffs appealed.

*Errors assigned* were in refusing to take off the nonsuit.

*Owen J. Roberts,* of *Roberts, Montgomery & McKee-han,* for appellants.

*Francis V. Lloyd,* for appellee.

OPINION BY MR. JUSTICE FRAZER, February 22, 1915:

In this action John L. Douglas in his own right and as next friend of his son, John L. Douglas, Jr., seeks to recover damages for injuries sustained by the son through alleged negligence on the part of defendant. On the afternoon of June 30, 1909, the son then nine years of age, went to the Devon Polo Field with other boys to witness a game of polo in which defendant participated as one of the players. The boundary of the playing field was marked by a board fence between twelve and fourteen inches in height. The boys first sat upon the low fence, and when ordered off by an officer withdrew to a terrace two or three feet in height, about twenty-five feet beyond the low fence and across a race track. During the game the ball was driven in the direction of the terrace on which the boys were sitting. It did not, however, go outside of the playing bounds. The players rode rapidly toward the ball and all with the exception of defendant remained within playing bounds. Defendant's horse jumped over the low fence, crossed the race track and ran into the spectators watching the game from the terrace, and trampled young Douglas, inflicting severe and permanent injuries upon him. At the trial in the court below a nonsuit was entered which the court subsequently refused to take off. This action is assigned for error.

The negligence alleged in plaintiff's statement is that the defendant in taking part in the polo game "rode his horse so rapidly, recklessly, carelessly and negligently as to entirely override the boundary of the playing field, and to cause his horse in wanton disregard of the safety of the said John L. Douglas, Jr., and the other spectators to rush violently upon the crowd and in so doing to

knock down and trample upon the said John L. Douglas, Jr., thereby causing the latter severe and painful injuries of a serious and permanent character."

The point upon which this case turns is whether or not defendant had control of his horse, and it was within his power by proper management to have avoided the accident. The trial judge was of opinion that the testimony failed to show negligence upon the part of defendant, and in sustaining the motion for a nonsuit relied upon the testimony of Thomas McKenna, a spectator at the game, who occupied a position near that of young Douglas, and who after describing the driving of the ball toward plaintiff, the riding of the horses rapidly in the same direction and of defendant's horse leaving the playing bounds said: "Everybody took to his heels .....no man could tell where the horse was going to land," and in answer to the question, "How was he going, slowly?" said: "I would call it the man had no control over his horse—that's what he had—he had no control whatever or else he wouldn't have come that distance—when he is on the field a man can turn on a ten cent piece." There is in the game of polo the element of risk, and both players and bystanders assumed the chance of the ordinary dangers, incident to the game in participating in and witnessing the contest. Spectators, however, do not assume a risk which results from reckless playing, or the failure of a player to control and guide a horse so as to avoid accident when such control is reasonably possible. They, however, have a right to assume that the game will be played within boundaries, and that players will not voluntarily or without reasonable effort upon their part to prevent, permit their horses to leave the field limits. If a horse becomes unmanageable; gets beyond the control of the rider and rushes beyond the field boundaries, and injury results to an onlooker, no negligence can be charged to the rider. That McKenna was competent to express an opinion as to defendant's ability to control his horse, is extremely doubt-

ful.   In no portion of the testimony do we find that he possessed such knowledge of either the game of polo or the management of horses as to qualify him to express an opinion of any value upon either of these matters.   However, assuming that he possessed such knowledge, the value or worth of his opinion was for the jury whose province it was, under all the evidence, to say whether the horse became unmanageable.   If his opinion, considered with the testimony of the other witnesses was convincing, then the injury received by plaintiff was the result of an accident for which no one was accountable; if not, and either from defendant's anxiety to reach the ball in advance of his opponents or from other cause amounting to wrongful act upon his part, defendant would be chargeable with negligence.

Judgment reversed with a procedendo.