MORRIS SCHLENGER, APPELLANT, v. "JACOB" WEINBERG AND "JOSEPH" BLUM AND FLORHAM GOLF LINKS, INCORPORATED, RESPONDENTS.

Submitted February 14, 1930—Decided May 19, 1930.

For the appellant, *Feld & Weiss* and *Ward & McGinnis*.

For Weinberg and Blum, *Elizabeth Blume*.

For Florham Golf Links, Incorporated, *Collins & Corbin* (*Edward A. Markley* and *Howard F. McIntyre*, on the brief).

The opinion of the court was delivered by

CASE, J. While on the course owned by defendant Florham Golf Links, Incorporated, the plaintiff was struck and injured by a golf ball said to have been driven by an unnamed "member" of the "club." He was in the presence of defendant Jacob Weinberg. Defendant Samuel Blume, impleaded as Joseph Blum, was the president of the corporate owner. It does not clearly appear what precise relationship the "club" bore to the corporate defendant, nor what constituted "membership." The plaintiff's contention is that he was an invitee on the premises and that he was,

at the instance of the defendants, taken, without warning, to a place of danger with resulting injury. At the close of plaintiff's case the trial court nonsuited as to all three defendants. Plaintiff appeals therefrom.

The evidence does not connect the corporate defendant with the transaction. Such testimony as bore thereon was admitted only as against one or both of the individual defendants. Mere ownership of a golf course does not impute liability for an injury suffered by another from a golf ball driven by a player. The nonsuit as to Florham Golf Links, Incorporated, was obviously correct.

Plaintiff's brother-in-law, Samuel Geldizer, testified that on an earlier occasion Weinberg had asked him to "come out to see their golf links, and I said I would come some Sunday if I get some friends," and that Weinberg added, "Well, you can bring your brother along with you, Mr. Schlenger;" that following this the witness, with his wife, Schlenger and Schlenger's wife, went to the grounds and asked for Weinberg, who presently appeared and who, at the suggestion of defendant Blume, undertook to "show us the grounds," Blume remarking that "if you look at the place you will surely sign up as a member to-day;" and that, having gotten on the links, Schlenger was hit by a driven golf ball. This testimony is in parts corroborated by the plaintiff, Mrs. Geldizer and Mrs. Schlenger.

Plaintiff relies upon *Phillips* v. *Library Co.*, 55 *N. J. L.* 307, as the leading case on the character of liability that he charges against the defendants in the instant case. Assuming, but not holding, that the plaintiff was an invitee rather than a licensee and that the duty of the individual defendants was the same as though they had been owners, the applicable rule as stated in the cited case is that "an owner of lands who by invitation, express or implied, induces persons to come upon his premises is under a duty to exercise ordinary care to render the premises reasonably safe for such purposes, or at least to abstain from any act that will make the entry upon or use of the premises dangerous." The defendants are not charged with the causative act of injury. Who the driver

of the ball was we are not told; but he was not either of the defendants nor, so far as appears, was he the servant or agent of either of them. The plaintiff's right of action against the person who inflicted the injury is not involved. The contention in plaintiff's brief is: "Plaintiff had no knowledge of the dangerous situation in which defendants placed him. It was negligence to so place him or to fail to warn him or to warn the golf player who injured him."

The plaintiff was there to "see the golf links." There was no invitation other than that. It can scarcely be argued that golf links should be kept free of driven golf balls. It follows that a person who enters upon the links is necessarily subject to whatever danger that fact entails. Nor is it ordinarily practicable to see a set of links without going upon them. Nevertheless, a golf course is not usually considered a dangerous place, nor the playing of golf a hazardous undertaking. It is a matter of common knowledge that players are expected not to drive their balls without giving warning when within hitting distance of persons in the field of play, and that countless persons traverse golf courses the world over in reliance on that very general expectation. There is no testimony to sustain a finding that Weinberg was aware, or that there were circumstances to put him on notice, that anyone on the grounds would, without signalling and in violation of that common rule of action, drive his ball into the group of three persons of whom Weinberg and the plaintiff were two. Under those circumstances we find no negligence in that he did not warn the player.

Whether or not the plaintiff was as completely ignorant of the game of golf and its incidents as his testimony indicates is not controlling. The question of the ordinary care required of the defendants must, to some extent, be predicated upon the knowledge of the ordinary person. Was it obligatory upon Weinberg to specifically caution the plaintiff that the links were there for the very purpose that players might drive golf balls over them, and that if a person through a player's carelessness or otherwise should be hit by a ball the contact might cause injury? If that be so, it seems

equally logical that in inviting a guest to observe a tennis game one must warn that a ball may, by inadvertence, be driven over the side lines and, by striking a sensitive organ, as the eye, do physical injury, or that at a baseball game a host should warn his guest to be on guard against a long ball driven by a unusually vigorous player; and that failure to give such warning would leave one liable for subsequent injuries of that character. The mind readily multiplies such instances. Potential mishaps are incidents to almost every occasion.

We think that the law does not require warnings, against such unusual and chance incidents, to accompany the giving of an invitation to do that, not inherently dangerous, which is a widely accepted phase of contemporaneous life and of which the ordinary person thoroughly understands the significance.

As was said by Mr. Justice Dixon in *Wiley* v. *West Jersey Railroad Co.*, 44 *N. J. L.* 247, 251: "The rule of law requires that the damages chargeable to a wrong-doer must be shown to be the natural and proximate effects of his delinquency. The term 'natural' imports that they are such as might reasonably have been forseen, such as occur in an ordinary state of things; the term 'proximate' indicates that there must be no other culpable and efficient agency intervening between the defendant's dereliction and the loss."

Inasmuch as the defendant went purposely to see the links and his injury was an unforeseen and unusual incident that occurred while he was in the act of realizing his intention, we consider that the injury was not the natural and proximate effect of the failure to give warning by either Weinberg or Blum; indeed, under the circumstances of the case, we conclude that there was no duty resting upon either of those defendants to give warning.

Plaintiff, in support of his argument, quotes a portion of our opinion in *Sebeck* v. *Plattdeutsche*, 64 *N. J. L.* 624, which was an action brought by a spectator who claimed damages because, having paid admission to a fireworks exhibition, he was injured by the premature explosion of a bomb. In dis-

cussing the plaintiff's allegation that the defendant should have erected a protective barrier the opinion in that case stated that if by that expression the plaintiff meant "something which would have acted as a shield to protect spectators from danger resulting from the premature explosion of fireworks, or from their being sent off in the wrong direction, no such duty was cast upon the defendants. By erecting such a barrier they would have destroyed the very object of the exhibition, for a barrier of that kind, in order to afford perfect protection, would necessarily interfere with the view of those present of all fireworks which were not thrown into the air. Dangers which result to the spectators at an exhibition of the kind given by Gerhardt from the absence of such a safeguard, must, in the very nature of things, be assumed by them." We find nothing therein at variance with our present views; indeed we consider that the underlying thought is the same.

The judgment below is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, BLACK, CAMPBELL, LLOYD, CASE, BODINE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, WELLS, JJ. 15.

*For reversal*—None.