[Civ. No. 14191. First Dist., Div. One. Sept. 19, 1950.]

MYRTLE R. BROWN, Appellant, v. SAN FRANCISCO BALL CLUB, INC. (a Corporation), Respondent.

Edward D. Mabson for Appellant.

S. A. Ladar, Jesse H. Steinhart and John J. Goldberg for Respondent.

WOOD (Fred B.), J.—This is an appeal by plaintiff from a judgment entered upon a directed verdict for the defendant in an action against San Francisco Ball Club, Inc., for damages for personal injuries sustained while attending a professional baseball game at Seals' Stadium, San Francisco.

The appeal is also from an order denying plaintiff's motion for new trial. That phase of the appeal should be dismissed, for such an order is not appealable.

Appellant, a woman of 46 years, attended the game as the guest of friends, one of whom furnished and purchased the tickets which were for seats in an unscreened portion of the stadium near the first-base line. The game was in progress when they arrived and about an hour later the accident occurred while the players were changing sides. Appellant was by some object and sustained serious injury. Evi-

dence is lacking whether or not it was a baseball, or from what direction it came. However, the motion for directed verdict appears to have been made, and the issues discussed by the parties upon this appeal, upon the assumption that appellant was hit by a baseball, possibly thrown from second to first base, touching the first baseman's glove and passing thence into the stand.

Respondent owned and operated the stadium which had a seating capacity of 18,601, divided into screened and unscreened areas. Approximately 5,000 seats were behind a screen back of the home plate. The remainder were unscreened and in two sections behind the first-base and third-base lines respectively. Tickets for seats were sold at separate windows, one window for each of these three sections, each window marked for a particular section. Patrons decided where they would sit, and went to the appropriate window for their seats. It is generally true of all the games held in this stadium that a great majority of the patrons are situated in the unscreened sections, because they prefer an unobstructed view.

The attendance at this particular game was approximately 5,000. There were many vacant seats in each seating area. Most of the spectators were seated in the first-base and third-base unscreened sections, very few in the home-plate screened area.

For this game, held October 14, 1945, after the close of the Pacific Coast League season, respondent rented the stadium to others and had no control over the conduct of the game or the players; nor did it publicize the game or fix the admission price. Ticket sales at the stadium were handled by respondent's employees and the ushers who escorted patrons to their seats were its employees. The rental charged was a percentage of the gross receipts, not of the profits.

Accordingly, the duty of care, if any, which respondent owed to appellant was that of proprietor, toward a patron, of the stadium at which this game was played.

■ The applicable general principle is that the owner of property, insofar as an invitee is concerned, is not an insurer of safety but must use reasonable care to keep his premises in a reasonably safe condition and give warning of latent or concealed perils. He is not liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care. (*Shanley v. American Olive Co.*, 185 Cal. 552, 555 [197 P. 79]

v. *Sutter Hospital Assn.*, 211 Cal. 556, 560 [296 P. 76]; *Blodgett* v. *B. H. Dyas Co.*, 4 Cal.2d 511, 512 [50 P.2d 801]; *Dingman* v. *A. F. Mattock Co*, 15 Cal.2d 622, 624 [104 P.2d 26].) To the extent that the duty of self-protection rests upon the invitee, the duty of the invitor to protect is reduced. The extent of these relative duties depends upon many factors involving the capacity and opportunity of the invitor to protect the invitee and the capacity and opportunity of the invitee to protect himself.

In baseball, one of these factors is that the patron participates in the sport as a spectator and in so doing subjects himself to certain risks necessarily and usually incident to and inherent in the game; risks that are obvious and should be observed in the exercise of reasonable care. This does not mean that he assumes the risk of being injured by the proprietor's negligence but that by voluntarily entering into the sport as a spectator he knowingly accepts the reasonable risks and hazards inherent in and incident to the game.

The duty of the proprietor or operator of a baseball stadium toward his patrons is specifically defined, as follows: " 'With respect to the law governing cases of this kind, it has been generally held that one of the natural risks assumed by spectators attending professional games is that of being struck by batted or thrown balls; that the management is not required, nor does it undertake to insure patrons against injury from such source. All that is required is the exercise of ordinary care to protect patrons against such injuries (*Edling* v. *Kansas City Baseball etc. Co.*, 181 Mo.App. 327 [168 S.W. 908]), and in doing so the management is not obliged to screen all seats, because, as pointed out by the decisions, many patrons prefer to sit where their view is not obscured by a screen. Moreover, the management is not required to provide screened seats for all who may apply for them. The duty imposed by law is performed when screened seats are provided for as many as may be reasonably expected to call for them on any ordinary occasion (*Wells* v. *Minneapolis Baseball etc. Assn.*, 122 Minn. 327 [142 N.W. 706, Ann.Cas. 1914D, 922, 46 L.R.A.N.S. 606]; *Brisson* v. *Minneapolis Baseball etc. Assn.*, 185 Minn. 507 [240 N.W. 903]); and if as in the cases of *Wells* v. *Minneapolis Baseball etc. Assn., supra,* and *Kavafian* v. *Seattle Baseball Club Assn.*, 105 Wash. 215 [177 P. 776, 181 P. 679], a spectator chooses to occupy an unscreened seat, or as in the Brisson case, *supra,*

488

is unable to secure a screened seat and consequently occupies one that is not protected, he assumes the risk of being struck by thrown or batted balls; and if injured thereby is precluded from recovering damages therefor. As aptly said in *Cincinnati Baseball Club Co.* v. *Eno*, 11° Ohio St. 175 [147 N.E. 86], it is common knowledge that in baseball games hard balls are thrown and batted with such great swiftness they are liable to be thrown or batted outside the lines of the diamond, and spectators occupying positions which may be reached by such balls assume the risk of injury therefrom.'" (*Quinn* v. *Recreation Park Assn.*, 3 Cal.2d 725, 729-730 [46 P.2d 144].)

It would seem necessarily to follow that respondent fully discharged its duty toward appellant, as concerns the risk to her of being hit by thrown or batted baseballs, when it provided screened seats for all who might reasonably be expected to request them, in fact many more screened seats than were requested. Hence, the injury suffered by her when struck by a thrown ball, while voluntarily occupying an unscreened seat, did not flow from, was not caused by, any failure of performance by respondent of any duty owed her, and did not give rise to a cause of action in her favor against respondent for damages for such injury.

Appellant seeks to take this case out of the application of the rule upon the theory that she was ignorant of the game of baseball and the attendant risks, hence cannot be said to have knowingly assumed the risk. The point is not well taken. Although she had a limited experience with baseball, she was a mature person in possession of her faculties with nothing about her to set her apart from other spectators and require of her a lower standard of self-protection from obvious, inherent risks than that required of other spectators. She was, at the time of the accident, 46 years of age; had lived in the San Francisco area since 1926; was about to go to a school for training and to have a job as saleswoman in a real estate office; had seen one baseball game prior to this, in 1928, played in a big field, not a ball park, when she observed the game from an automobile and did not see balls thrown or knocked into the crowd; and had seen kids in the street pitching balls. At the game at which this accident happened she knew there was no screen in front of her seat but failed to notice if any of the seats were behind a screen. She was in attendance for about an hour before the accident, which should have apprised her of the risk of being struck by a ball. Instead of observing, she paid no particular attention to the game and

spent her time visiting with a friend. We find nothing here to take appellant outside the usual rule, whether it be said that this "common knowledge" of these obvious and inherent risks are imputed to her or that they are obvious risks which should have been observed by her in the exercise of ordinary care.

Similarly, in the Quinn case, plaintiff urged that because she was a minor of 14 years and went to the game alone, the question whether she sufficiently understood the risk of being hit by a ball when sitting in an unscreened section was necessarily for the jury. In overruling this contention, the court observed that the evidence showed that Quinn was a "high school student, strong, mentally alert, weighing about 125 pounds, and active in several kinds of athletics, including baseball." (3 Cal.2d, at p. 730.) She had been interested in baseball for about two years, attending such games about twice a week during the baseball season. She was entirely familiar with the rules of the game, the manner in which it was played, the frequency with which foul balls were batted into the grandstand, and the danger to spectators of being struck thereby. This evidence demonstrated actual knowledge of the risk. The significant feature of the case is that in directing a verdict for the defendant the trial court determined from this evidence and from its observation that Quinn had sufficient capacity and understanding of the situation to be governed by the same rule as an adult. By affirming the judgment, the Supreme Court decided that such a question is one proper for the trial court to determine. In respect to the defense of contributory negligence, the Supreme Court said: ". . . it is held generally that, in the absence of a clear showing of abuse of discretion, reviewing courts will not interfere with the rulings of trial courts in submitting or refusing to submit to juries the question of whether the contributory negligence of children of the age of fourteen years and under was such as to prevent their recovering for injuries sustained by them" and that "there are a number of cases involving injuries to minors about the age of the girl in question here wherein it was held as a matter of law that they were guilty of contributory negligence . . ." (3 Cal.2d, at p. 731.)

Even more like the instant case on its facts is *Brisson* v. *Minneapolis Baseball & Athletic Ass'n*, 185 Minn. 507 [240 N.W. 903], cited with approval in the Quinn case. Brisson, an adult spectator, hit by a ball while occupying an unscreened

seat at a league game, asserted ignorance of the risks to which he was exposed by the game, with which he said he was unfamiliar, although as a small boy he had witnessed ball games and as an adult had recently witnessed at least one league game and in this game had witnessed some six innings. Such ignorance he claimed took him outside of the usual rule in regard to spectators in his situation at such games. In overruling that contention the court made the following significant observation $\prec$ "In our opinion no adult of reasonable intelligence, even with the limited experience of the plaintiff, could fail to realize that he would be injured if he was struck by a thrown or·batted ball, such as are used in league games of the character which he was observing, nor could he fail to realize that foul balls were likely to be directed toward where he was sitting. $\langle$ No one of ordinary intelligence could see many innings of the ordinary league game without coming to a full realization that batters cannot, and do not, control the direction of the ball which they strike and that foul tips or liners may go in an entirely unexpected direction. He could not hear the bat strike the ball many times without realizing that the ball was a hard object. Even the sound of the contact of the ball with the gloves or mitts of the players would soon apprize him of that. It is our opinion that the plaintiff, notwithstanding his alleged limited experience, must be held to have assumed the risk of the hazards to which he was exposed. $\gtrless$ (240 N.W., at p. 904.) The cause was remanded with directions to the trial court to enter judgment for defendant notwithstanding the verdict.

Another case quite like the instant case upon its facts is *Keys* v. *Alamo City Baseball Co.* (Tex.Civ.App.), 150 S.W.2d 368. Plaintiff, a woman of 42 years, injured by a baseball while occupying an unscreened seat as a spectator at a game, testified she knew nothing of the game or the dangers lurking in and about playing fields, claiming that, therefore, it was the duty of the defendant to warn her of those dangers. The issue was submitted to the jury, which found that the failure to warn plaintiff constituted negligence of the defendant proximately causing the accident and that she did not assume the risk of being hit by a baseball. The court held that both of those findings were conclusively refuted, both by the evidence and by common knowledge, quoting and applying the rule announced in the Quinn case. It further appeared that this was the second baseball game plaintiff had ever witnessed. Her son who accompanied her at this game was 14 years

of age. It was deemed inferable from the record that he was a baseball "fan," as is nearly every normal American boy. He was in the habit of attending games at this field. It was deemed further inferable as a matter of course, and not denied by the plaintiff, that for years the son had handled baseballs in and around his home under the watchful eye of his mother. Said the court: "This history, coupled with a universal common knowledge, was bound to have acquainted plaintiff with the potential dangers inherent in a baseball in play; with the fact that a flying baseball is capable of inflicting painful, sometimes serious and even fatal, injury; and that when in play it may fly in any direction and strike any bystander not on the alert to evade it. The knowledge of those characteristics of a baseball must be imputed to every reasonable person having the admitted experience and opportunities of plaintiff to know these things. Added to that imputed knowledge, plaintiff had sat through five or six innings in this very game, and her son, sitting by her side, noticed that several foul balls had been batted into the grand stands and within the range of his observation. We think the record conclusively refutes the jury finding that plaintiff did not 'assume the risk' of the very accident which befell her, and that the trial judge did not abuse his discretion in rendering judgment against plaintiff, notwithstanding that finding." (150 S.W.2d, at p. 371.)

Continuing, the court held that the trial judge did not abuse his discretion in disregarding the jury finding that defendant was guilty of negligence in failing to warn plaintiff of the dangers incident to occupancy of the unscreened area, saying in that regard: "Plaintiff was a mature woman, presumably possessed of average intelligence, with nothing about her manner or appearance to set her apart from the thousands of other patrons entering the park on this occasion, or to indicate her claimed inexperience or lack of appreciation of the perils of the game. Her own son, sitting at her side, with full knowledge of those perils and of the extent of his mother's awareness, did not warn her. It would have been absurd, and no doubt would have been resented by many patrons, if the ticket seller, or other employees, had warned each person entering the park that he or she would be imperiled by vagrant baseballs in unscreened areas. And yet that would have been defendant's duty, if plaintiff's contention is sound. We overrule that contention." (150 S.W.2d, at p. 371.)

Of the cases relied upon by appellant herein, only one, *Ratcliff* v. *San Diego Baseball Club*, 27 Cal.App.2d 733 [81 P.2d 625], relates to the peculiar liability to their patrons of operators of baseball stadiums. That case involved a plaintiff who had elected to occupy a seat within a screened section and was injured while approaching her seat through an unscreened passageway. That case called for the application of a rule of liability materially different from that available to a person injured while occupying a seat in an unscreened section.

We conclude that the evidence herein, viewing it most favorably to the appellant, does not take her outside the application of the rule announced in the Quinn case; that she assumed the risk of injury in respect to which she complains; that the injury was not caused by any negligence upon the part of the respondent; and that determination thereof was a proper function of the trial court upon motion for directed verdict.

In the absence of negligence upon the part of the respondent, it is unnecessary to consider the question of contributory negligence upon the part of the appellant.

The judgment is affirmed and the appeal from the order denying a new trial is dismissed.

Peters, P. J., and Bray, J., concurred.