## Schentzel *v.* Philadelphia National League Club, Appellant.

Argued September 30, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Thomas Raeburn White, Jr.*, with him *White, Williams & Scott*, for appellant.

*Harry Goldbacher*, with him *James C. Lanshe*, for appellee.

OPINION BY ROSS, J., April 14, 1953:

In this action of trespass for personal injuries, damages were sought by the wife plaintiff (hereinafter referred to as plaintiff) for pain and suffering and by the husband plaintiff for expenses incurred by reason of his wife's injuries and for loss of consortium. The jury returned a verdict for the plaintiff and found against her husband. Defendant's motion for judgment n.o.v. was refused, and it has appealed to this Court.

On the afternoon of June 5, 1949, plaintiffs, residents of Allentown, traveled to Philadelphia to see a "doubleheader" baseball game between the Philadelphia Phillies and the Chicago Cubs. They arrived at Shibe Park, the scene of the games, and found a "tremendous crowd" at the various ticket windows. Plaintiff husband became part of a long ticket line. He testified that he was assured by the ticket seller that the seats being assigned to him were "pretty good" and that they were "back of the screen", as he desired them to be. During this alleged discussion the plaintiff stood nearby but it is not disclosed whether she heard or paid any attention to it. The seats, it developed, were located in the upper stand, on the first base side of the diamond, but not behind the protective screen, being removed therefrom by about 15 or 20 feet. The husband testified that when they reached their seats the first game was in the sixth or seventh inning of play, that on discovering the seats were not in the protected area he got up but saw it was impossible to return to the ticket window to exchange the tickets because of the crowd coming down the aisle, so resumed his seat. A minute or two later, or about ten minutes after he and plaintiff had originally been seated, plaintiff was struck by a foul ball.

Plaintiff testified that she had never seen a baseball game prior to the one at which she was injured, that she knew nothing about it, that she had seen televized games but had seen no balls go into the stands on television.

That the husband was thoroughly familiar with this particular hazard is established by his testimony on cross-examination. He stated, "There is a million foul balls, maybe three or four or five in an inning, goes into the stand."

Negligence is the doing of that which a reasonably prudent man would not do under the circumstances, or the failing to do that which a reasonably prudent man would do under the circumstances. *Smith v. Harwood Electric Co.*, 255 Pa. 165, 99 A. 473. It is never presumed, and the burden of proving it is on the plaintiff. To recover in a negligence action, a plaintiff must prove (1) a legal duty owing to him by defendant; (2) an unintentional breach of that duty by careless conduct; (3) a causal connection between defendant's conduct and plaintiff's injury. Furthermore, the plaintiff's case must not disclose that he voluntarily assumed the risk or was guilty of contributory negligence. The mere happening of an accident is no evidence of negligence. *Thompson v. Gorman*, 366 Pa. 242, 246, 77 A. 2d 413. "One who maintains a 'place of amusement for which admission is charged, is not an insurer, but must use reasonable care in the construction, maintenance and management of it, having regard to the character of the exhibitions given and the customary conduct of patrons invited :' Haugh v. Harris Bros. Am. Co., 315 Pa. 90, 172 A. 145." *Kallish v. American Base Ball Club of Philadelphia*, 138 Pa. Superior Ct. 602, 603, 10 A. 2d 831.

Plaintiff contends that the legal duty owing her by defendant (which she claims was breached) consisted of "exceptional precautions" toward its women patrons, many of whom are ignorant of the hazards involved in the game, and who are induced to attend by special invitation, as on afternoons when they are admitted free; that these exceptional precautions include extension of the screen coverage behind the batter's and catcher's positions to a wider area, still leaving "a few sections" for patrons who prefer to watch the game from unprotected areas. In substance the argument is tantamount to a request for a holding that a base-

ball club must at its peril always have available a seat behind the screen whenever a patron requests one. The plaintiff has furnished no proof that the screening of a wider area would have resulted in her being seated within it, thus, by inference, precluding her injury. She and her husband found on their arrival that "the place was packed" with a "tremendous crowd" during the sixth or seventh inning of the first game. It was the crowded condition, according to her husband, which prevented his return to the box office to exchange the tickets. Assuming an enlarged area of screenage, it does not necessarily follow that the crowd which arrived earlier would not have occupied the entire bloc of protected seats but would instead have left two seats vacant for their occupancy. The Supreme Court of Minnesota was confronted with a similar problem in *Brisson v. Minneapolis Baseball & Athletic Ass'n.*, 185 Minn. 507, 240 N.W. 903. In holding that the management is under no duty to provide screened seats for all who desire them, regardless of the number of patrons present, the Court stated: "In our opinion they [defendants] exercise the required care if they provide screen for the most dangerous part of the grand stand and for those who may be reasonably anticipated to desire protected seats, and that they need not provide such seats for an unusual crowd, such as the one in attendance at the game here involved." In general accord with this view are these cases from other jurisdictions: *Quinn v. Recreation Park Ass'n*, 3 Cal. 2d 725, 46 P. 2d 144; *Brown v. San Francisco Ball Club, Inc.*, 99 Cal. App. 2d 484, 222 P. 2d 19; *Keys v. Alamo City Baseball Co.*, Tex. Civ. App. 150 S. W. 2d 368; *Williams v. Houston Baseball Ass'n*, Tex. Civ. App. 154 S.W. 2d 874; *Ratcliff v. San Diego Baseball Club*, 27 Cal. App. 2d 733, 81 P. 2d 625; *Blackhall v. Capitol District Baseball Ass'n*, 154 Misc. 640, City Ct., 278 N.Y.S. 649,

affirmed, 285 N.Y.S. 695; *Wells v. Minneapolis Baseball & Athletic Ass'n*, 122 Minn. 327, 142 N.W. 706.

In this case, plaintiff produced no evidence tending to show that defendant's screening of certain sections of its grandstand deviated from that customarily employed at other baseball parks. ·The courts of this Commonwealth have adhered to general usage as a test of negligence with respect to methods and appliances employed in business and have held that in the absence of proof *by plaintiff* that defendant deviated from ordinary standards the question of negligence is not for the jury. See *Mills v. Lit Brothers*, 347 Pa. 174, 32 A. 2d 10; *Beck v. Stanley Co. of America*, 355 Pa. 608, 50 A. 2d 306; and *Yearsley v. American Stores Co.*, 97 Pa. Superior Ct. 275. We discussed this principle in our recent decision in *Blake v. Fried*, 173 Pa. Superior Ct. 27, 95 A. 2d 360, and because of its peculiar applicability to the present situation we repeat what we said, in this ·connection, at page 34 of that case: "... plaintiffs adduced no evidence whatever as to the height of protective fences at other race tracks which the jury could use as a basis of comparison to determine whether or not defendants were negligent in not having erected a higher one. While customary methods do not furnish a conclusive or controlling test of negligence or justify a practice obviously laden with danger, they are nevertheless to be considered as factors of measurement of due care. Price v. New Castle Refractories Co., 332 Pa. 507, 3 A. 2d 418 Moran v. Pittsburgh-Des Moines Steel Co., 86 Fed. Sup. 255, 267. A jury is not permitted to speculate or guess; conjecture, guess or suspicion does not amount to proof. Sharble v. Kuehnle-Wilson, Inc., 359 Pa. 494, 59 A. 2d 58. Without a standard of comparison to use as a basis in their determination of the existence of negligence, the jury's verdict must be considered as repre-

senting mere conjecture, and their conception of a reasonable standard, formulated retrospectively, cannot be a legal basis for a finding of negligence. *Hammer v. Philadelphia*, 104 Pa. Superior Ct. 119, 122-123, 158 A. 659."

No claim is made that the screen was defective in structure. The only question of defectiveness relates to the extent of coverage. It is of record that the screen protected almost all the seats in five sections of defendant's upper stand and practically all of five sections in its lower stand. There is no evidence to indicate the number of seats behind the protective screen. Provided with such meagre background of evidence, the jury were nevertheless permitted to set a theoretical standard of due care upon which to predicate their finding of negligence. We think their verdict under these circumstances cannot represent more than mere conjecture. For a comparison of information available to the jury, cf. *Curtis v. Portland Baseball Club*, 130 Or. 93, 279 P. 277; *Brown v. San Francisco Ball Club, Inc.*, supra, 99 Cal. App. 2d 484, 222 P. 2d 19; *Grimes v. American League Baseball Co.*, Mo. App. 78 S.W. 2d 520, where definite statistics appear as to measurements of the screen or the relative number of seats protected by screening as compared with exact capacity of the grandstand.

Appellant contends that plaintiff has produced no evidence of negligence on its part and argues that as a spectator at its baseball game she voluntarily assumed the risk of being struck by batted or thrown balls. It is clear that plaintiff did not *expressly* consent to accept the hazard which caused her injury. However, consent may be implied from conduct under the circumstances. We quote at length from *Prosser on Torts* at pages 383-384: "By entering freely and voluntarily into any relation or situation which pre-

sents obvious danger, the plaintiff may be taken to accept it, and to agree that he will look out for himself, and relieve the defendant of responsibility. *Those who* participate or *sit as spectators at sports* and amusements *assume all the obvious risks of being hurt by* roller coasters, *flying balls,* [Kavafian v. Seattle Baseball Club Ass'n, 105 Wash. 215, 177 P. 776; Brisson v. Minneapolis Baseball & Athletic Ass'n, 185 Minn. 507, 240 N.W. 903 (baseball); Schlenger v. Weinberg, 107 N.J.L. 130, 150 A. 434, 69 A.L.R. 738 (golf); Douglas v. Converse, 248 Pa. 232, 93 A. 955 (polo); Ingersoll v. Onondaga Hockey Club, 245 App. Div. 137, 281 N.Y.S. 505 (hockey)], fireworks explosions, or the struggles of the contestants. 'The timorous may stay at home.' [CARDOZO, C. J., in Murphy v. Steeplechase Amusement Co., 250 N.Y. 479, 166 N.E. 173.] . . . One who enters upon the premises of another, even as a business visitor, assumes the danger of all known or obvious conditions which he finds there. The consent is found in going ahead with full knowledge of the risk." (Italics ours.)

Plaintiff argues that the danger, as to her, was not obvious and that she cannot be held to have had full knowledge of the risk because this was her first baseball game. Laying aside any imputation to her of the knowledge and appreciation of the danger possessed by her husband, the answer to her argument appears in this further quotation from *Prosser* at pages 387-388: "Since the basis of assumption of risk is not so much knowledge of the risk as consent to assume it, it is possible for the plaintiff to assume risks of whose specific existence he is not aware. He may, in other words, consent to take his chances as to unknown conditions. . . . In general, the boundaries of assumption of risk coincide with those of the defendant's obligation of care. They are not, however, invariably

identical, since the defendant may be free to proceed upon the supposition that the plaintiff understands the risk and undertakes to protect himself against it, although the plaintiff is in fact ignorant of the risk, and does not consent to assume it. The distinction is well illustrated by a New York case [Ingersoll v. Onondaga Hockey Club, 245 App. Div. 137, 281 N.Y.S. 505] in which it was held that the owner of a hockey rink was not required to ask each entering patron whether he had ever witnessed a hockey game before, but might reasonably assume that the danger of being hit by the puck would be understood and accepted."

Plaintiff was a woman 47 years of age. There is nothing whatever in the record to support an inference that she was of inferior intelligence, that she had subnormal perception, or that she had led a cloistered life. Consequently, she must be presumed to have been cognizant of the "neighborhood knowledge" with which individuals living in organized society are normally equipped. We think the frequency with which foul balls go astray, alight in the grandstand or field, and are sometimes caught and retained by onlookers at baseball games is a matter of such common everyday practical knowledge as to be a subject of judicial notice. It strains our collective imagination to visualize the situation of the wife of a man obviously interested in the game, whose children view the games on the home television set, and who lives in a metropolitan community, so far removed from that knowledge as not to be chargeable with it.

The problem here presented is one of first impression with us. As stated by the learned court below, there is authority in other jurisdictions "the tenor [of which] appears to be that one attending a baseball game assumes a risk of the ordinary dangers inherent in the game, and that persons of ordinary intelligence

and experience are presumed to be aware of such dangers", while "there are other decisions clearly indicating that in the absence of knowledge of the dangers involved in watching a baseball game, a patron does not assume the risk of injury by attending a game". The only vaguely close approximation to the present factual situation within this jurisdiction is that of *Douglas v. Converse,* supra, 248 Pa. 232, 93 A. 955. There a spectator at a polo game brought an action for damages against one of the players for injuries incurred when the latter's horse went beyond the boundaries of the field and struck him. In the *Douglas* case the issue was whether defendant was negligent in failing to maintain control over his horse. The Court, in reversing the nonsuit entered by the lower court and in awarding a new trial, held that it was within the province of the jury under all the evidence to decide whether the horse had become unmanageable. At page 235 the Court set forth the guiding principle, viz.: *"There is in the game of polo the element of risk, and both players and bystanders assumed the chance of the ordinary dangers, incident to the game in participating in and witnessing the contest.* Spectators, however, do not assume a risk which results from reckless playing, or the failure of a player to control and guide a horse so as to avoid accident when such control is reasonably possible." (Italics supplied.) In that case the injury was caused by an animate agency which was under the immediate and constant control—or at least potentially so—of the defendant player. In the present situation, once the impact with the bat caused the ball to move in an unintended direction, all possible control over it vanished. The Court in the *Douglas* case intimated that the serious accident involved more than "the chance of the ordinary dangers incident to the game" assumed by bystanders.

In *Keys v. Alamo City Baseball Co.,* supra, Tex. Civ. App., 150 S.W. 2d 368, plaintiff was injured by being struck by a foul ball at defendant's stadium. She had never attended a game before and was ignorant of the risk involved. Judgment n.o.v. was affirmed, the Court holding that there was no reason for defendant to be aware of plaintiff's lack of appreciation of the danger and that it would be "absurd" to require the ticket seller or other employe to warn each patron that he or she would be imperilled by "vagrant baseballs" in unscreened areas of the grandstand.

*Anderson v. Kansas City Baseball Club,* Mo. Sup., 231 S.W. 2d 170, is similar in principle. Plaintiff alleged that she was wholly unaware of the hazards of baseball and that defendant was negligent in seating her in an unscreened portion of its grandstand. She had been seated behind the screen but was requested by an usher to vacate to another seat in the unscreened section, which he assured her was safe. In finding that the complaint did not state a cause of action the Missouri Court held that there was no duty on the part of a proprietor to warn an invitee of activities which do not involve an "unreasonable risk" of harm to him, that the risks and hazards did not result from any negligence on the part of defendant but rather were obvious and inherent in the game itself, and that it did not believe that plaintiff's alleged inquiry as to the safety of an unscreened seat imposed upon defendant a duty to warn which did not otherwise exist.

The plaintiff in *Brown v. San Francisco Ball Club, Inc.,* supra, 99 Cal. App. 2d 484, 222 P. 2d 19, likewise alleged ignorance of the risk attendant upon viewing a baseball game and that she could not, therefore, have assumed it knowingly. In disposing of this contention the Court made the pertinent observation that plaintiff was "a mature woman in possession of her

faculties", "forty-six years of age", who had seen one baseball game prior to the one at which she was injured but "did not see balls thrown or knocked into the crowd", and stated: "We find nothing here to take appellant outside the usual rule, whether it be said that this 'common knowledge' of these obvious and inherent risks are imputed to her or that they are obvious risks which should have been observed by her in the exercise of ordinary care."

In *Blakeley v. White Star Line,* 154 Mich. 635, 118 N.W. 482, the Michigan Supreme Court stated: "It is knowledge common to all that in these games [of baseball] hard balls are thrown and batted with great swiftness; that they are liable to be muffed or batted or thrown outside the lines of the diamond, and visitors standing in position that may be reached by such balls have voluntarily placed themselves there with knowledge of the situation, and may be held to assume the risk." This early dictum was quoted with approval in *Crane v. Kansas City Baseball Co.,* 168 Mo. App. 301, 153 S.W. 1076.

On a motion for judgment n.o.v. the testimony must be viewed in the light most favorable to the plaintiff and she must be given the benefit of every fact and every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in her favor. *Menzel v. Lamproplos,* 168 Pa. Superior Ct. 329, 77 A. 2d 645. Despite this benefit, we think that as a matter of law plaintiff has failed to prove negligence on the part of defendant, and that she must be charged with an implied assumption of the normal and ordinary risks incident to attendance at a baseball game.

Plaintiff stresses the fact that her husband requested tickets of defendant's ticket seller calling for seats behind the protective screen and was prevented from

exchanging them by the crowded condition of the aisles. That fact might be pertinent had she chosen to bring her action on the theory of assumpsit for breach of contract, but we do not see its relevancy to negligence. We do not thus place form over substance because in view of our decision it adds nothing to her case.

Judgment reversed and here entered for defendant.