Fred **GREEN**, Administrator of the Estate of James Henry Bruno a/k/a Jaime Perez Bruno, Deceased

v.

**PHILADELPHIA GAS WORKS**, Division of the United Gas Improvement Company.

Fred **GREEN**, Administrator of the Estate of James Henry Bruno a/k/a Jaime Perez Bruno, Deceased

v.

Frank **PARISI**, Individually and as Trustee for Dorothea Parisi et al.

Civ. A. Nos. 43975, 43732.

United States District Court,
E. D. Pennsylvania.

Oct. 26, 1971.

· Gordon W. Gerber, Dechert, Price & Rhoads, Philadelphia, Pa., for plaintiff.

John M. Fitzpatrick, Dilworth, Paxson, Kalish, Kohn & Levy, Walter J. Timby, Jr., LaBrum Doak, Simon Lenson, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION

VANARTSDALEN, District Judge.

The plaintiff has moved for a new trial. The suit was brought under the Pennsylvania Wrongful Death Statute, Pa.Stat. tit. 12, § 1602 (1953), and the Survival Statute, Pa.Stat. tit. 20, § 320.-601 (1950) and jurisdiction is founded upon diversity. After a bifurcated trial, the jury rendered a verdict for all defendants on the question of liability.

The deceased, a 37 year old, Spanish speaking Puerto Rican, male, lived with his wife and children and rented his home from John DeMarco, a real estate agent for the owner, trustee, Frank Parisi. The lease was entered into on August 13, 1966, after certain repairs had been made to the property. A used gas stove was purchased by Mr. Parisi personally and installed by a handyman hired by Mr. DeMarco. The pilot light on the stove never worked. Mrs. Bruno, her mother and a close friend, all testified that from August 13th to November 5th they smelled gas in the house and that it was strongest in the kitchen. Mrs. Bruno testified that on the morning of November 5th, while Mr. Bruno was lighting the gas stove, a fire was ignited in the kitchen and he was engulfed in flames resulting in his death.

During the course of the trial, two distinct theories of the cause of the fire were argued. The plaintiff contended that the faulty installation of the used stove coupled with the failure of the gas company to properly inspect prior to turning on the gas and failing to shut the gas off at the curb when they became aware of the gas leak caused a gas build-up in the kitchen which exploded when the deceased lit the match. The defendants contended that the deceased had been cleaning automobile parts in a container of gasoline just prior to his lighting the stove and when he lighted the match his saturated clothing and/or the container burst into flames. Considerable expert testimony and evidence was submitted supporting both of these divergent theories.

 Plaintiff's first allegation of prejudicial error is that the jury should not have been charged on assumption of risk since there was no evidence to support a finding of assumption of risk. This Court agrees with plaintiff's position to the extent that the law of assumption of risk should not have been charged if there was no evidence in the case from which the jury could conclude that

the deceased knew of the danger of a natural gas explosion, appreciated that risk and voluntarily accepted that risk when he chose to light the stove. Restatement (Second) of Torts § 496D, 496E (1965). In making this determination, this Court was faced with a substantial problem. The death of Mr. Bruno made a determination of his subjective knowledge and appreciation of risk difficult because he was not available to testify at trial. In addition, he is presumed to have exercised due care at the time of his death, although that presumption may be rebutted by testimony to the extent that the issue should be submitted to the jury. Laubach v. Haigh, 433 Pa. 487, 252 A.2d 682 (1969); Bragdon, Admr. v. Pittsburgh Railways Co., 375 Pa. 307, 100 A.2d 378 (1953). However, it has been recognized that the requisite knowledge and appreciation can be evidenced by the circumstances surrounding the accident and by the fact that the danger is one commonly recognized by the public. Comment d to Section 496D of the Restatement (Second) of Torts (1965) states that "[o]ne who has spent a substantial time upon particular premises ordinarily would be found in fact to understand and appreciate the normal, ordinary risks of those premises. * * *" This rule is made more significant when the danger being confronted is one which is commonly appreciated by the community in general. In a personal injury case the appreciation of the risk can be deemed present even against a denial by the injured party where the danger of a particular condition is ordinarily known by persons in the surrounding community. This rule should also be applicable in a death case, permitting a jury to make a factual determination.

The courts of Pennsylvania have recognized that assumption of a risk is very much a part of a case where the only evidence of awareness is the common knowledge attributable to men of ordinary intelligence in the plaintiff's community. In the case of Schentzel v.

Phila. Natl. League Club, 173 Pa.Super. 179, 96 A.2d 181 (1953), a husband and wife sued a baseball club for injuries sustained when the wife was hit by a foul ball while attending the game. Her husband attended games frequently and was familiar with the fact that foul balls do on occasion fly into the stands. The wife, however, testified that this was the first baseball game she had attended and "that she knew nothing about it." The jury returned a verdict for the plaintiff and the court denied the defendant's motion for a judgment n. o. v. The Superior Court reversed the lower court and entered a verdict for the defendant. Even when applying the rule that the testimony must be viewed in the light most favorable to the plaintiff and given the benefit of every fact and reasonable inference resolving all conflicts in favor of the plaintiff in granting a judgment n. o. v., the Superior Court held "we think that as a matter of law plaintiff has failed to prove negligence on the part of the defendant, and that she must be charged with an implied assumption of the normal and ordinary risks incident to attendance at a baseball game." *Id.* at 191, 96 A.2d at 187.

The *Schentzel* court established the plaintiff's awareness and appreciation of the risk by the following reasoning:

"Plaintiff was a woman 47 years of age. There is nothing whatever in the record to support an inference that she was of inferior intelligence, that she had sub-normal perception, or that she had led a cloistered life. Consequently, she must be presumed to have been cognizant of the 'neighborhood knowledge' with which individuals living in organized society are normally equipped. We think the frequency with which foul balls go astray, alight in the grandstand or field, and are sometimes caught and retained by onlookers at baseball games is a matter of such common everyday practical knowledge as to be a subject of judicial notice. It strains our collective imagination to visualize the situation of the wife of a man obviously interested in the game, whose children view the games on the home television set, and who lives in a metropolitan community, so far removed from that knowledge as not to be chargeable with it." *Id.* at 188, 96 A.2d at 186.

While many of the recent cases applying this doctrine have involved injuries received during sporting activities, *e. g.*, Taylor v. Churchill Valley Country Club, 425 Pa. 266, 270 n., 228 A.2d 768 (1967), this logical approach to assumption of risk is applicable in the case of Mr. Bruno.

■ There was no evidence presented in this case that would indicate that Mr. Bruno was of inferior intelligence, had subnormal perception or, because he only spoke Spanish, was shut off from the society in which he lived. There was testimony that Mr. Bruno was 37 years old and that he had lived in this country for 15 years. He was a machinist by vocation, which included setting up and fixing machines, and was an automobile mechanic by avocation. For at least three months, he lived in a home with gas heat and with a gas stove. His family testified that they smelled natural gas during these three months and were disturbed by it and apparently aware of its dangers. The smell was strongest in the kitchen. Among persons living in a home with a gas stove, it is a matter of common everyday practical knowledge that the smell of natural gas in the kitchen is a warning of danger from asphyxiation or from an explosion should a match be lighted. In addition, if the jury believed that the fire on November 5th was caused by a gas explosion, they could also conclude that because of the considerable concentration of gas in the kitchen, the odor of gas must have been very strong that morning. All of these factors taken together are clearly evidence from which the jury could conclude that Mr. Bruno, on the morning of November 5th, knew of the strong odor of natural gas in the kitchen, was aware

of the danger this presented and appreciated the risk that an explosion could occur when he voluntarily struck the match to light the stove. Therefore, the jury was properly charged on assumption of risk and under these facts it would have been improper for the Court to exclude assumption of risk from this case. *See* Comment e of Section 496D, Restatement (Second) of Torts (1965).

My charge on assumption of risk is particularly mandated by the Third Circuit's decision in Green v. Sanitary Scale Co., 3 Cir., 431 F.2d 371 (1970). In that case the district court judge failed to charge on assumption of risk, and the Court of Appeals reversed the plaintiff's verdict. The plaintiff, a boy, had pushed meat into an electric meat grinder with his bare hand, his fingers were caught in the gears and four of his fingers had to be amputated. The question was whether the evidence indicated that the plaintiff was aware of the risk that he would or was likely to be injured by his conduct. The Court emphasized the importance of leaving issues of assumption of risk for the jury.

> "We would usurp the traditionally broad discretion of juries to apply their common sense were we to declare that a jury which has heard a party testify that he knew the danger of putting his hand in a moving gear was barred from drawing the inference that he also knew there was a risk in putting his hand too close to the gear, simply because he had not acknowledged that he was expressly aware of that extent of the risk." *Id.* at 374.

While the Third Circuit was dealing with a personal injury case in which the plaintiff had taken the stand, the emphasis the court placed on leaving this issue to the jury is generally applicable to assumption of risk.

The case of Hennigan v. Atlantic Refining Company, 282 F.Supp. 667, 681–682 (E.D.Pa.1967), relied on heavily in plaintiff's brief, involved a gas explosion in a sewer in which three workers were killed. The court held that no charge would be made on assumption of risk because no evidence was submitted which showed that the workers knew or should have known that the vapors were at or near the explosive limit, that a random spark could cause an explosion, and that the equipment being used was likely to create such a spark. *Id.* at 682. In *Hennigan* the fire was started by a spark thrown by the equipment utilized in the work undertaken while in the instant case the decedent himself lighted the match with the purpose of lighting the gas stove. The jury could find that it was his deliberate act which ignited the gas, making it a far stronger case for assumption of risk than the workers' mere presence in an area containing an odor of natural gas. In addition in Mr. Bruno's case, there was evidence of the awareness of the presence of natural gas for a long period prior to the day of the explosion. Even if these factual distinctions were not present, *Hennigan* would not be controlling to the instant case in light of the Third Circuit's decision in Green v. Sanitary Scale Co., *supra*.

■ The plaintiff's second allegation of prejudicial error is that the jury should not have been charged on the subject of contributory negligence since there was no evidence to support such a finding. This contention is rejected in light of our ruling that there was sufficient evidence drawn from the surrounding circumstances to support a finding of assumption of risk. The jury could easily have determined that Mr. Bruno was aware of the natural gas in the kitchen and even if he did not appreciate the risk involved, a reasonable man would have appreciated it and left his home until the gas company turned off the gas and the cause of the leak was remedied.

■■ The plaintiff contends that the court erred in refusing to charge the jury that the Philadelphia Gas Works would be liable for a failure to exercise reasonable care in determining whether or not there was a gas leak or for fail-

ing to refuse to turn on the gas at plaintiff's home if the gas lines and system were not safe and did not pass their safety standards. In the charge of the court on the duties of the gas company (T.R. 964–966), the court stated, in brief, that it is the duty of the consumer and not the gas company to see that the gas lines of the consumer from the street to the residence are maintained and in a serviceable condition (T.R. 965). Once the company is made aware of facts which reasonably inform it that such gas lines are unsafe, then it has the duty to investigate. The gas company has the duty once it knows or has reason to know of defects in customers' lines to shut off the gas until repairs are completed. Under the circumstances of this case, this charge was comprehensive.

The plaintiff contends that the jury should have been charged that it was hearing only the question of liability first and that if there was a finding of liability, it would then have presented to it the issue of damages. In the court's initial instructions to the jury, prior to the openings by counsel, the court explained this point to the jury (T.R. 5), and it was reemphasized by the arguments of counsel. It was not necessary to explain this again in the charge.

The plaintiff contends that the opinion testimony of the fire marshal, William Shirar, should not have been received in evidence "since it is not competent for the fire marshal to testify on the subject of carelessness, since his opinion was one of probability only, since his opinion was premised upon information provided by others and since his opinion was premised upon matters so remote and speculative as to deprive the opinion of any evidentiary value." The only attack on the expert's competency is the contention that he, as a fire marshal, was authorized only to determine if fires were intentionally started and not to determine if they were caused by carelessness as opposed to any other non-intentional cause. This contention is rejected because a fire marshal is clearly authorized to determine the cause of

origin of a fire whatever it may be. Pa. Stat. tit. 53, § 14526 (1957). Therefore, the fire marshal was clearly within his statutory authority in determining the particular cause of the fire.

The opinion itself is challenged first because it allegedly did not have a proper evidentiary foundation and second because the opinion was merely speculative or guesswork. This court first holds that this expert's conclusion had a sufficient evidentiary basis. Prior to giving his opinion, Mr. Shirar indicated the facts upon which he based his opinion. (T.R. 734). From his examination of the premises on the day of the fire, he determined the point of origin from the location of the heaviest lowest charring area in the property. (T.R. 734). The official report made pursuant to his investigation stated other factual bases for his opinion which were reiterated on the stand. Among these factors was the finding of a two-gallon motor oil can containing gasoline and automobile parts in the rear shed and a burnt, twisted two-gallon can at the bottom of the basement's steps. In his capacity as fire marshal, Mr. Shirar, took statements from neighbors in order to obtain more facts for his official conclusion. In particular, he was concerned with the fact that Mr. Bruno's clothing had been burned from his body when he ran from his house in flames. While these facts were possibly weakened by cross-examination, the issue of credibility was for the jury and Mr. Shirar's conclusion as an expert had a sufficient evidentiary basis. The expert opinion testimony of a fire marshal has been held to have a sufficient basis of fact under similar circumstances. Bogacki v. American Machine & Foundry Co., 417 F.2d 400, 409 (3rd Cir. 1969).

The plaintiff's second contention that Mr. Shirar's opinion was mere conjecture because of the use of the word "probably" is without foundation. Mr. Shirar, in his testimony at trial, came to the same conclusion as he did in his fire marshal's report which was that "[t]he fire was probably caused by the

victim using a flammable liquid as a cleaning agent, the fumes of which were ignited by the kitchen range." (T.R. 742). Black's Law Dictionary (1951) defines "probably" as "[I]n all probability; so far as the evidence shows; presumably; likely." The use of the word "probably" does not show guesswork but merely that it is conceivable that there could be other causes of the fire of which no evidence was found. Mr. Shirar's conclusion was clearly competent and the credibility and the weight to which it should be given was clearly a matter for the jury. To hold that an expert must be positive without any qualification or question as to other possibilities is simply to encourage "experts" to be less than completely candid and accurate in their testimony.

The plaintiff contends that the fire marshal's photographs should not have been received in evidence because their relevance was dependent upon his testimony which should not have been admitted. I have ruled that his testimony being relevant and competent was properly admissable. The photographs were taken simultaneously with the official investigation to which he testified and were relevant on the question of the cause of the fire and as exemplifying his oral testimony concerning his observation. They were properly admitted into evidence and sent out with the jury.

It must be emphasized that the admission of photographs is largely a matter within the discretion of the trial judge. Puskarich v. Trustees of Zembo Temple, 412 Pa. 313, 317, 194 A.2d 208 (1963). This rule of admissibility is applicable in the federal court. Fed.R.Civ.P. 43(a). Also the determination of which exhibits received in evidence should go out with the jury is within the discretion of the trial judge. Murray v. United States, 76 U.S.App. D.C. 179, 130 F.2d 442 (1942); Wilson v. Pennsylvania Railroad, 421 Pa. 419, 433, 219 A.2d 666 (1966).

Plaintiff's contention that prejudicial error occurred because the photographs of the pan in the kitchen sink were sent out with the jury must fail. These photographs were part of the fire marshal's official investigation, and they were not prejudicial. In addition, since the plaintiff failed to make a timely objection, he has no standing to raise his objection at this time. Wilson v. Pennsylvania Railroad Co., 421 Pa. 419, 433, 219 A.2d 666 (1966).

The plaintiff contends that it was error not to have permitted the jury to take exhibit "P–18", the Philadelphia Gas Works publication entitled "Specifications for the Installation of Gas Piping and Domestic Gas Appliances," out with them for their deliberations. Not only would this exhibit have been confusing to the jury, but the publication was directed to independent contractors and not to Gas Company service personnel who turned on the gas in the instant case (T.R. 922–924). While this publication may have had some indirect relationship to the standards required of Gas Company personnel, the publication involved many things about which there had been no testimony at all. It was, therefore, properly excluded from going out with the jury.

The plaintiff also contends that the fire marshal's report should not have been sent out with the jury because it overemphasized the fire marshal's theory on the cause of the fire. This report was the official report of this fire stating both the conclusion and the reasons for that conclusion. The fire marshal was an independent, impartial witness who did not receive a fee for making his investigation from any party in this litigation. It must also be noted that while the plaintiff did not submit a formal written report by his expert on the cause of the fire, several photographs taken by his expert were introduced into evidence. These photographs (Exhibits P7–P11) aided the expert in his testimony and were ultimately sent out with the jury. The jury was provided with all the exhibits involving the plaintiff's expert's theory of the cause of the fire.

Therefore, it was fully appropriate for the jury to have the fire marshal's report before them in their deliberations in order that they might consider all theories of the cause of the fire.

██ The plaintiff complains that he should not have been foreclosed from cross-examining the fire marshal to find out the context of what was said to him by the decedent and Jose Bruno. The statements made by the decedent were double hearsay. The interview took place at the hospital after the accident and, therefore, the accuracy of the answers is highly questionable. The dying declaration, res gestae, and statements against interest exceptions to the hearsay rule were not applicable here; the statements would be self-serving, and not subject to cross-examination. In addition an interpreter was employed but he was not called to testify. The statements of Jose Bruno, who was not available for trial, were hearsay and were merely speculative regarding the conduct of Mr. Bruno and the cause of the accident because he was not an eye-witness. The testimony of both these parties was properly excluded.

██ The plaintiff contends that the testimony by Mrs. Bruno, that she and one of her children who could speak English had gone to see Mr. DeMarco to complain about the gas smell in her home and that her child acted as an interpreter when she made the complaint (T.R. 63–66), having been stricken, should have been reinstated. It was first stricken because it was hearsay and there was no evidence that the conversation was accurately translated. The plaintiff contends that Mr. DeMarco's testimony, at pages 620–621, established that Mr. DeMarco could understand Spanish, thus obviating the necessity of showing the accuracy of the translation. However, Mr. DeMarco merely indicated that he knew a little Spanish. He stated that he only knew a few words of Spanish and that he could understand some things. He admitted that he could understand the words for "gas range" or "smell of gas." (T.R. 620–621). He did not state that he could converse in Spanish. Obviously, if he had a good understanding of the language, the interpreter would not have been necessary. Because Mr. DeMarco did not have a full understanding of Spanish, it would have been inappropriate to reinstate Mrs. Bruno's testimony that she complained of the gas leak to Mr. DeMarco. In addition Mr. DeMarco's understanding of Spanish would in no way cure Mrs. Bruno's inability to understand English because Mr. DeMarco contradicted Mrs. Bruno when he testified that no complaints of gas leaks were ever made to him. (T.R. 603).

██ The plaintiff contends that it was improper for this court to allow the Philadelphia Gas Works to call the witnesses of Frank Parisi for cross-examination and vice versa. Upon reviewing the transcript in this case, it appears that the plaintiff neglected to object to this practice until the trial was nearly completed. (T.R. 809–811). Some early reference to the order of examination was made at pages 677–678 of the Trial Transcript but no reference was made to defendant's calling each other's witnesses as of cross-examination at that time. Rule 43(b) of the Federal Rules of Civil Procedure permits cross-examination of adverse parties. The plaintiff objected to the defendants' cross-examining each other's witnesses on the grounds that they were not adverse within the meaning of Rule 43(b) because cross-claims had not been filed. However, the suits were originally separate and had been consolidated for trial. The defendants' represented conflicting interests and although they could all be held liable for the death of Mr. Bruno, each could be held solely liable or be required to contribute a portion of the verdict. Under these circumstances, the cross-examination was appropriate. Even if this procedure was subject to timely objection, the objection was made so late in the trial as to make correction

or change of no consequence and the continued use of leading questions harmless.

The plaintiff lastly contends that the court should have permitted him to read in its entirety plaintiff's Interrogatory No. 10 and the answer by the Gas Works. The excluded portion of the answer made by the defendant, Gas Works, was tantamount to a refusal to answer more specifically because the interrogatory was too general. The portion of the answer having any probative value in this case was read to the jury.

A careful review of the record indicates that all relevant issues were capably and fairly presented to the jury by counsel, and that the jury was properly instructed as to the law. The issues were clearly matters for the jury's determination. Although a new trial might conceivably result in a different verdict more satisfactory to plaintiff, this hope or expectation would clearly not be the basis for the grant of a new trial. The verdict was fully justified by the weight of the evidence and the law. The motion for a new trial must be denied.