## Mikesell v. Robb

*George R. Craig* and *Bruce Harrison, Jr.*, for plaintiff.

*John R. Dierst, Jr., John R. Bredin* and *Pringle, Bredin & Martin*, for defendant.

THOMPSON, J., July 11, 1956.—This case arose out of an accident, which took place during a game of golf and the parties to the action were members of a golf foursome. The trial resulted in a verdict for defendant and we have now before us plaintiff's motion for a new trial. In addition to the formal reasons contained in the motion and additional reasons for a new trial, there are the following specific reasons, which now require our consideration:

"5. The learned trial judge erred in his charge to the jury by discussing the risk of being hit by a foul ball at a baseball game, the risk of being hit by a golf ball when playing golf, and the risk of injury by engaging as a participant in a football game, and in stating to the jury:

" 'Yet football games come and go and nobody sues anybody else for damages, although they may be hurt because as incident to the playing of that game, physical bumps and bruises and injuries of various kinds do occur and a person that undertakes to play the game of

football assumes some of the risks that are involved in that game; the usual risks.'

"6. The learned trial judge erred in his charge to the jury stating:

" '. . . and so the Defendant argues to you that when Mr. Robb tried to hit that ball out of this grass, that it became the duty of any of the other members of the foursome to keep out of the road, *and that is the usual custom, among golf players, to keep away so that nothing may happen to them*', inasmuch as the italicized portion of this sentence, wherein the learned trial judge charged the jury that it *is* the custom of golf players to 'keep away' ignored the fact that, by his own admission, the defendant here had specifically *requested* the plaintiff to perform an act which limited the extent to which the plaintiff could 'keep away'."

On the afternoon of August 23, 1949, plaintiff and three friends, one of whom was defendant, made up a foursome which engaged in a game of golf at the Alcoma Country Club located in Allegheny County.

In driving from the seventh tee defendant's drive was sliced and the ball had gone off of the fairway and down a slope in the rough and came to rest under an apple tree. Defendant thought that the ball was about 15 feet from the base of the apple tree. Plaintiff and other members of the foursome thought that the ball came to rest at about two to four feet from the base of the apple tree. All the members of the foursome assisted in attempting to find the ball which was located in the grass about four inches high. The ball was under a limb of the apple tree, which branched out from the tree above the head of defendant when he was standing near his ball.

Defendant requested plaintiff to hold the branch of the apple tree and pull it around so that it would not interfere with defendant's swing at his ball. Defendant then took two or three practice swings and did not

come near plaintiff with his club. When defendant finally attempted to hit his ball, the result was a slice and on the backward swing of his club, which was one of the iron clubs, the club struck plaintiff in the face and occasioned the injuries which brought about this accident. Plaintiff stated that he was 9 or 10 feet away from the spot where defendant struck his ball.

Defendant was called for cross-examination and during the cross-examination and also later on in his examination in defense, defendant was asked to demonstrate in the courtroom, first by plaintiff's counsel and later by his own counsel, the swinging of his number four or five iron. In the later demonstration one of the counsel for defendant stood at a distance of 9 or 10 feet behind defendant while the swinging of the club was being demonstrated and the club did not anywhere near come in contact with his counsel. The reason why plaintiff was struck by the club seems to have been somewhat of a mystery.

Plaintiff himself stated that he was about two feet higher than defendant at the point where he was standing holding the limb, that he did not observe defendant move his feet or step back when he, plaintiff, was hit or did not observe him making any change in his position: Record pages 23, 24, 27 and 28.

The two other members of the foursome beside plaintiff and defendant were called as witnesses for plaintiff. One of these men, Ruel B. Wolford, also testified to the practice swings by defendant and that he did not notice his feet slip, and when asked how far away plaintiff was said: "Well, I guess it to be 9 or 10 feet in back of him" and that the ground sloped from where Mr. Mikesell stood down toward the tree: Record page 58.

The other member of the foursome was Harry M. Brown. Mr. Brown stated that defendant took his normal practice swing and then took what looked like his

normal swing at the ball and that he did not know how the club managed to hit plaintiff, that he thought plaintiff was 9 or 10 feet away but he could not explain how the accident occured and that defendant's swing at the ball was a normal swing: Record pages 61 and 64.

Defendant's evidence in some respects varies from that of plaintiff's witnesses, and called as a witness on cross-examination he stated that he did not recall looking back before he made his swing, that he thought his feet remained on the ground without being moved, that the club did not leave his hand and that the ball as he recalled it was about 15 feet from the tree trunk: Record pages 32, 33, 36, 37 and 38. When being examined in connection with the testimony for the defense, he stated that when he turned around after the swing he thought plaintiff was about four or five feet away, that his feet did not slip as far as he knew nor did the club slip out of his hand, but that he held it firmly in both hands and that his swing was a normal swing and that if the man stood 8 or 10 feet behind him, he did not see how he could have struck him with his club: Record page 91.

The members of this golf foursome were all friends and had played together for years either once or twice a week.

The verdict of the jury as originally tendered read:

"And now to wit on this the third day of February, 1956 we, the Jurors empanelled in the above entitled case, find that the defendant Mark L. Robb was not negligent."

At the direction of the court, the clerk added to the above words the following:

"And we therefore find a verdict in his favor," and the verdict as finally approved by the jury contained in addition the latter words.

It will be observed that this is not a case where the court either granted a motion for compulsory nonsuit

or gave binding instructions to the jury. The facts were all submitted to the jury with what we deem to be adequate instructions.

Plaintiff's able counsel earnestly contended in the oral argument and in his very comprehensive brief that the trial judge erred in attempting to illustrate what is meant by assumption of risk by reference to foul balls in a baseball game and sliced and hooked shots in a golf game and the normal results of a football game, and particularly complains that these illustrations were somewhat irrelevant and intended to mislead the jury. Plaintiff's counsel quotes from the reference to football games in the charge of the court. The entire statement of the trial judge in his charge regarding this matter was as follows:

"Now, the first question to determine here, as I see it, was there negligence on the part of Mr. Robb, the defendant, that was the approximate or immediate cause of this accident? And as I said, we have to consider the nature of this game of golf in determining that question. A person who engages in a game that involves any physical activity or violence, and many games do, assumes the ordinary risks that are incident to the playing of such a game. I might use several illustrations possibly to explain just what I mean by that. We have had cases in Court here where persons who went to a baseball game at Forbes Field, got hit by a foul ball, for example, and the question would be, we know that in the playing of the game of Baseball, by the professionals, that there are very many balls hit, where the ball goes up in the air and sometimes it goes over the top of the grandstand and sometimes it goes to the right or to the left and we call it a foul ball. Sometimes it goes right into the grandstand, to one side or the other, and ordinarily it follows that a person who gets hit by a foul ball doesn't have a right of action to recover damages unless there had been some

special circumstances about it that would vary the usual rule, because they are expected to assume the risk of going to a baseball game and everybody knows that you can't play the game of baseball without hitting a lot of foul balls. It just happens in every game of baseball. And then if you take a very violent game, the game of football, there are eleven players arranged on one side against eleven players on the other and there are violent physical contacts throughout that game, from the beginning to the end, and sometimes some of the players get hurt. It's a rare occasion if any of them would escape some bruises and bumps as a result of such games. Sometimes they have rather serious injuries. Yet, football games come and go and nobody sues anybody else for damages, although they may be hurt because as incident to the playing of that game, physical bumps and bruises and injuries of various kinds do occur and a person that undertakes to play the game of football assumes some of the risks that are involved in that game; the usual risks.

"Now then, in the playing of this game of golf, there has been testimony here that a person tries to hit that ball down the fairway and tries to hit it as straight as he can, that the ball is very often deflected one way or the other way and persons sometimes are hit with golf balls and the question comes up then whether they have assumed the risk of the game. They do assume the risk of the game and if they are hit with a golf ball in accordance with the usual playing of the game, very often it must be held that they have assumed the risk involved.

"Now, this wasn't an action where a golf ball hit some other person, it's a rather unusual one, I think, where the golf club hit the other person": Record pages 106 and 107.

We do not think that this explanation in its entirety was erroneous.

Plaintiff also complains of a part of the charge of the trial judge reading as follows:

" '. . . and so the defendant argues to you that when Mr. Robb tried to hit that ball out of this grass, that it became the duty of any of the other members of the foursome to keep out of the road, *and that is the usual custom, among golf players, to keep away so that nothing may happen to them*', inasmuch as the italicized portion of this sentence, wherein the learned trial judge charged the jury that it *is* the custom of golf players to 'keep away' ignored the fact that, by his own admission, the defendant here had specifically *requested* the plaintiff to perform an act which limited the extent to which the plaintiff could 'keep away'."

What plaintiff has quoted from the charge is only a part of what was said. The whole statement of the trial judge sets forth the contentions of each of the parties and is as follows:

"Now then, going back to the question of negligence, the plaintiff claims I believe, here that Mr. Robb told Mr. Mikesell to move this limb and that Mr. Mikesell did that, and that the defendant ought to have been quite sure where Mr. Mikesell was when he was swinging this club, and I take it that that is what he says. The negligence here is that he did not make sure where Mr. Mikesell was before he made this stroke.

"Now, on the part of the defendant it's contended that golf players in playing this game of golf are expected to watch each other, whenever a man is going to swing his club, and then keep out of the road and to watch while that operation is going on and that if the plaintiff here got too close while that was going on, when he should, as a part of the game, be watching the whole thing, that that was his own fault and that he was guilty of what we call contributory negligence.

"Now, both of those factors come into a case of this kind. You first of all determine whether there was

32

negligence on the part of the defendant here, Mr. Robb. If there was no negligence, then there should be a verdict in his favor. If there was negligence on his part in the operation, in the swinging of the club, then you turn to the question whether the plaintiff was exercising all the care which he should have exercised in playing this game, because where a plaintiff comes into Court and says that the defendant wasn't as careful as he ought to have been, why, the corresponding obligation is placed on the plaintiff who himself must have exercised reasonable care to avoid the accident that may take place. The burden of proving negligence is placed upon the plaintiff, but the burden of proving contributory negligence, or the plaintiff's own negligence is placed upon the defendant, but it is something that may arise out of the testimony of the case, and so the defendant argues to you that when Mr. Robb tried to hit that ball out of this grass, that it became the duty of any of the other members of the foursome to keep out of the road, and that is the usual custom among golf players to keep away so that nothing may happen to them": Record pages 108 and 109.

The first part of the court's charge calls attention to the moving of the limb, which defendant had requested plaintiff to do, and the statement at the end was not a mandatory direction to the jury, but was merely a restatement of defendant's position in the same way that the trial judge had previously stated plaintiff's position. We find no substantial error in this portion of the charge, nor can we assume, as plaintiff contends, that since the jury found that defendant was not negligent, the assumption of risk on the part of plaintiff involved in this proceeding can be ignored. It is too closely connected with the question of negligence and the important thing, it seems to us, in the finding of the jury is that it clearly found that no verdict should be rendered against defendant. The exact

words in which the jury expressed its conclusion are not, we think, as significant as plaintiff contends since the jury is composed of laymen and not of persons learned in the law.

The subject of negligence was fully discussed by counsel and by the court and the assumption of risk as well and the latter should not, we think, be ignored in the determination of the question now before us.

The trial of this case took place about six and one-half years after the happening of the accident and this lapse of time may account for the difference in the testimony of witnesses whom both sides regard as honorable gentlemen, who tried to explain matters as they recalled the same.

The status of a plaintiff in a golf game is discussed in Benjamin v. Nernberg, 102 Pa. Superior Ct. 471. Plaintiff, in that case, while preparing to putt into the cup at No. 6 green of the Schenley Park Golf Course in the City of Pittsburgh, was hit by a ball driven by another player from No. 7 tee. The court in an opinion by Judge Drew, later a member and Chief Justice of the Supreme Court, referred to a Scottish case and the rules there laid down and continued at page 475:

"It must be admitted that plaintiff assumed all the ordinary dangers incident to the game: Douglas v. Converse, 248 Pa. 232 (A polo game). Having already decided that there was no duty on defendant to warn plaintiff of the intended play, it follows that, if plaintiff was struck by a ball driven by defendant, the plaintiff had assumed, as a matter of law, the risk of injury resulting from his own participation in the game he and all the others were then playing. It is well known that not every shot played by a golfer goes to the point where he intends it to go. If such were the case, every player would be perfect and the whole pleasure of the sport would be lost. It is common knowledge, at least among players, that many bad

shots must result although every stroke is delivered with the best possible intention and without any negligence whatever. The plaintiff himself had been playing golf for a period of about 20 years and must therefore be held to be familiar with all the risks of the game. He must have known that many bad shots carry the ball to the right or the left of an intended line of play, and that if others were playing to the right or left, they would of course be endangered by such bad shots. This risk all golf players must accept."

The plaintiff has cited Getz v. Freed, 377 Pa. 480, 105 A. 2d 102, which was also a golf game case, which plaintiff apparently thinks has minimized the assumption of risk principle.

In Getz v. Freed a foursome was engaged in a game of golf at the Lebanon Country Club. Defendant, who was one of the foursome, had hooked his first drive out of bounds and over a low stone wall which was parallel to the boundary line of the fairway. Defendant then played a second shot, which was also very bad. After the second shot had been played, plaintiff and his partner walked toward the boundary line in an effort to locate defendant's first ball. Defendant, however, went back on the tee and, without the knowledge of plaintiff, drove a third ball which hit plaintiff. The court said at page 482:

"It is obvious that defendant violated a rule of the game and a custom known to all golfers, namely, he had to play his second drive and was not permitted to drive a third ball. Defendant contends that plaintiff assumed the risks of the game and likewise that he was guilty of contributory negligence in failing to watch alertly for defendant's next shot. Defendant admittedly gave no notice or warning of his intention to play a third ball from that tee. Under all the facts in this case defendant's contentions of assumption of risk and contributory negligence are devoid of merit.

"A person who plays golf assumes some risks of the game. Cf. Benjamin v. Nernberg, 102 Pa. Superior Ct. 471, 157 A. 10; Douglas v. Converse, 248 Pa. 232, 93 A. 955."

After further discussing assumption of risks, the court said at page 483:

"This is a very unusual case. Defendant was undoubtedly guilty of negligence in driving a third ball when his second drive was in the fairway, and he failed to warn the rest of the foursome of his intention to hit a third drive."

We do not interpret Getz v. Freed, supra, as withdrawing or overruling anything that was said in Benjamin v. Nernberg, supra.

Plaintiff also places some reliance on Miller v. Siebert, 296 Pa. 400. In the latter case plaintiff was struck while standing on the sidewalk at the intersection of two much traveled streets in the City of Pittsburgh, by a motor vehicle operated by defendant or by his employe or agent and seriously injured. There were no eye-witnesses to the accident and the only oral testimony bearing on the actual circumstances of the occurrence was that of plaintiff himself. "At the trial he was positive he saw no wagons on the street, that all vehicles moving there were motor cars; he was equally certain that he was struck by one of these, but could testify no further as to the circumstances of the accident, having been immediately rendered unconscious." His only conclusion as to the position of the vehicle when struck was that the machine must have "swerved and catched me; that is all I know". The court stated at page 406:

"He was in no manner assuming risk or taking chance. In this situation he was not required to, and naturally did not, anticipate danger."

The facts in Miller v. Siebert, supra, are entirely

different from those in the case at bar where assumption of risk is undoubtedly involved.

Plaintiff contends that since he was struck by defendant's club when he was 9 or 10 feet away from where defendant was standing that defendant must have move backward in some way. There were witnesses, however, to this accident, to wit, the other members of the foursome, and no one has testified to any movement on the part of defendant. Defendant, himself, testified that when the swing was completed and he had discovered that his club had hit plaintiff, that plaintiff was then, as he estimated, four or five feet away. It is obvious that the assumption by plaintiff that defendant must have slipped back in making his swing was not the only assumption which the jury may have been entitled to make.

We see no substantial reason for granting the motion for a new trial and it will, therefore, be refused.

### Order

And now, to wit, July 11, 1956, the motion for a new trial is refused and it is ordered that judgment be entered upon payment of verdict fee.

Eo die exception noted to plaintiff and bill of exception sealed.