431 F.2d 371
 Donald GREEN, a minor by William Green, his guardian and William Green, as parent
v.
SANITARY SCALE COMPANY, an Illinois Corporation, Appellant in No. 17,880,
v.
Max BERMAN, Third-Party Defendant, Appellant in No. 17,881.
 No. 17880.
 No. 17881.
 United States Court of Appeals, Third Circuit.
 Reargued May 26, 1970.
 Rehearing En Banc May 26, 1970.
 Decided July 16, 1970.
 
 Thomas Raeburn White, Jr., White & Williams, Philadelphia, Pa., for appellant in No. 17880.
 Raymond J. Porreca, Philadelphia, Pa., for appellant in No. 17881.
 Herbert Somerson, Zarwin, Prince, Baum, Steerman & Somerson, Philadelphia, Pa., for appellee.
 Before KALODNER, STALEY and FREEDMAN, Circuit Judges.
 Reargued before HASTIE, Chief Judge, and KALODNER, STALEY, FREEDMAN, SEITZ, VAN DUSEN, ALDISERT, ADAMS and GIBBONS, Circuit Judges.
 OPINION OF THE COURT
 FREEDMAN, Circuit Judge.
 
 
 1
 Donald Green, 16 years of age, was injured when his left hand was caught in the worm gear of a meat grinding machine in the meat department of a grocery store where he was employed. His father, William Green, instituted this action on the son's behalf and in his own right against Sanitary Scale Company, an Illinois corporation, claiming that Sanitary Scale's negligent design and manufacture of the machine caused the accident. Sanitary Scale in turn filed a third-party action against the operator of the grocery store, Max Berman, alleging that he was partly or wholly responsible for the accident because of his negligence in the removal of the machine guard. The jury found both Sanitary Scale and Berman negligent, and awarded damages of $45,000 to Donald Green and $4,000 to William Green. Judgment was accordingly entered in favor of the plaintiffs and against Sanitary Scale for $49,000, and in favor of Sanitary Scale and against Berman for contribution. From this judgment Sanitary Scale and Berman appeal.
 
 
 2
 On March 10, 1962, the meat department butcher cut a chunk of meat about the size of two baseballs and asked Green to grind it into hamburger. Green testified that he had ground meat about a dozen times before, and that his usual procedure was to place the meat in the funnel-shaped hopper until the meat was caught by the worm gear, about four inches below the top of the hopper. He would then withdraw his hand and use the aluminum stomper provided by Sanitary Scale for use with the machine.
 
 
 3
 He claimed that sometimes it was necessary in grinding the larger chunks to use his hand rather than the stomper because otherwise the worm gear would not catch the meat.
 
 
 4
 On this occasion, Green, following his normal procedure, forced the chunk into the hopper with his hand. When he felt the meat catch, he attempted to withdraw his hand but was unable to do so. He then sought to shut off the machine, but could not reach the switch which was located at the rear of the machine. By the time the butcher came to his aid and shut off the machine, he had sustained injuries which required the amputation of four fingers of his left hand.
 
 
 5
 On cross-examination Green admitted that there was nothing mysterious about the machine and that he was familiar with its construction; that he knew that his fingers would be caught if he inserted his hand too far into the machine; that he was uncertain how far he had voluntarily inserted his hand just prior to the injury, but that there was nothing on the meat itself with which his hand became entangled.[1]
 
 
 6
 On redirect examination he stated that he was positive that at least at the time he inserted the chunk of meat his fingers were not far enough into the hopper to come into contact with the worm gear. He stated that when the meat went down, his hand went down with it, and when the meat started coming out of the grinder he was unable to remove his hand.
 
 
 7
 At the close of the testimony, Sanitary Scale requested the court to charge on the defense of assumption of risk and declared its desire to argue to the jury that Green, by his admissions, had voluntarily assumed a known risk in putting his hand into the machine. The court refused to so charge and later denied Sanitary Scale's motions for judgment n. o. v. and, alternatively, for a new trial. Green v. Sanitary Scale Company, 296 F.Supp. 625 (E.D.Pa.1969).
 
 
 8
 The district court gave two reasons for its refusal to charge on assumption of risk. One reason was that in Pennsylvania, whose law governs this diversity action, the defense is available only in a suit by an employee against his employer, citing Kulka v. Nemirovsky, 314 Pa. 134, 170 A. 261 (1934) and Stark v. Lehigh Foundries, Inc., 388 Pa. 1, 130 A.2d 123 (1957).[2] But the expressions to that effect in those two decisions do not accurately reflect the law of Pennsylvania. In Witcjak v. New Franklin Coal Mining Company, 173 F.Supp. 661 (E.D.Pa.1959), Judge Van Dusen closely analyzed the Kulka and Stark cases and concluded that their broad language was partly dicta, that they were unrepresentative of Pennsylvania law, and that the defense of assumption of risk is not limited in Pennsylvania to suits between employee and employer. More recently, the Seventh Circuit Court of Appeals, in interpreting Pennsylvania law in Tantalo v. Arvin Industries, Inc., 359 F.2d 638, 640 (7 Cir.1966), held that the defense of assumption of risk was applicable in other than an employer-employee case and supported its conclusion by reference to numerous modern Pennsylvania cases in which the defense was considered even though no employer-employee relationship was present. Finally, the Pennsylvania Supreme Court has recently considered the defense in a negligence action which did not involve an employer and his employee, Cummings v. Borough of Nazareth, 427 Pa. 14, 233 A.2d 874 (1967).[3] From all this it is apparent that the doctrine of assumption of risk, however unattractive it may be today, is in force in Pennsylvania.
 
 
 9
 The district court also refused to charge on assumption of risk on the ground that the evidence would not justify a finding by the jury that Green had voluntarily exposed himself to an obvious or known danger.[4] We believe this view of the evidence is unjustified. As already indicated, Green testified that he was familiar with the mechanism of the meat grinder, realized that his hand would be caught if he inserted it too far into the hopper, and was uncertain just how far he had reached into the hopper before he found himself unable to remove his hand. From such testimony the jury could reasonably have inferred that Green knew that a risk of danger existed in using his hand instead of the aluminum stomper to press meat down into the hopper, and that he voluntarily assumed this risk because, as he testified, it was more convenient to use his hand with large chunks of meat.
 
 
 10
 It is argued that a distinction should be drawn between the risk of danger in putting the hand directly in the worm gear and using the hand to push meat down into the hopper. On this view, it is suggested that the only risk of which Green had specific knowledge was the danger of putting his hand in the worm gear; that while he was uncertain how far into the hopper he had put his hand, he was positive he had not voluntarily put it into the worm gear; and that while he may have acted unreasonably in bringing his hand so close to the gear, this went to the question of contributory negligence, of which the jury absolved him, and not to the question of assumption of risk in its primary sense. We think this argument too finespun to apply to the everyday practical problems of negligence law. It is tantamount to saying that a party assumes the risk only where there is a virtual certainty of injury and not merely a "risk" or chance, however obvious, that he may be injured by his voluntary and knowing behavior. In any case, in view of Green's testimony that he clearly understood the risk of putting his hand into the gear, it was for the jury to decide whether or not he must also have understood the obvious danger of placing his fingers too close to the gear, and also how far, in fact, he voluntarily put his fingers into the grinder before attempting to withdraw them.[5] We would usurp the traditionally broad discretion of juries to apply their common sense were we to declare that a jury which has heard a party testify that he knew the danger of putting his hand in a moving gear was barred from drawing the inference that he also knew there was a risk in putting his hand too close to the gear, simply because he had not acknowledged that he was expressly aware of that extent of the risk.
 
 
 11
 We hold, therefore, that the district court erred in refusing to charge the jury on the issue of assumption of risk and that defendant Sanitary Scale is entitled to a new trial. It is therefore unnecessary for us to reach the other errors assigned by Sanitary Scale in its appeal. We likewise do not reach the errors assigned by Berman, the third-party defendant; since his liability derives from Sanitary Scale's, he also is entitled to a new trial.
 
 
 12
 The judgment will be vacated and the case remanded for further proceedings consistent with this Opinion.
 
 
 
 Notes:
 
 
 [1]
 Q. "You had taken this machine apart, had you not?
 A. "Yes.
 * * * * *
 Q. "And, of course, you knew that if you put your fingers into that and they got caught in [the worm gear] it would grind your fingers up too; you knew that?
 A. "Right.
 * * * * *
 Q. "* * * [T]here was nothing to prevent you from laying the meat in there and then forcing it down with this plunger, was there? Was there?
 A. "No, sir.
 Q. "* * * [D]o you know how deep you got your fingers in here?
 A. "Not offhand. I would only be guessing.
 Q. "Well, there was nothing on this piece of meat to grab hold of your hand, was there?
 A. "No.
 Q. "Well, Donald, it may sound like a silly question, but if you put your fingers down here far enough you are just bound to get them caught in the machine; isn't that a fact?
 A. "True.
 Q. "And you did that; isn't that right?
 A. "I wasn't aware how far I put my hand down into the machine.
 Q. "Well, I realize that you didn't do it on purpose, but the reason — the reason you had this unfortunate accident is that you put your hand too far down in the machine; isn't that a fact?
 A. "Yes, sir.
 [On re-cross]
 Q. "* * * [T]here is nothing mysterious about this machine to pull your hand into it, is there?
 A. "No."
 
 
 [2]
 See also the similar statement — which was clearly dictum and had no bearing on the outcome — in Hennigan v. Atlantic Refining Company, 282 F.Supp. 667, 681-682 (E.D.Pa.1967), aff'd per curiam, 400 F.2d 857 (3 Cir. 1968)
 
 
 [3]
 See also Bartkewich v. Billinger, 432 Pa. 351, 356, 247 A.2d 603, 606 (1968) (assumption of risk accepted as defense to manufacturer's strict tort liability); Pritchard v. Liggett & Myers Tobacco Company, 350 F.2d 479, 484-485 (3 Cir. 1965), cert. denied 382 U.S. 987, 86 S.Ct. 549, 15 L.Ed.2d 475 (1966), amended 370 F.2d 95 (3 Cir. 1966), cert. denied 386 U.S. 1009, 87 S.Ct. 1350, 18 L.Ed.2d 436 (1967), (assumption of risk available in Pennsylvania as defense to liability based on breach of express warranty)
 
 
 [4]
 See Pritchard v. Liggett & Myers Tobacco Co., supra n. 3, 350 F.2d at 484. See also Restatement (Second) of Torts, §§ 496A-496E (1965)
 
 
 [5]
 See generally Prosser, Law of Torts 462-463 (3rd ed. 1964) and cases there cited
 
 
 STALEY, Circuit Judge (dissenting):
 
 13
 My basic disagreement with the majority is their failure to correctly characterize the risk of harm presented by this record. In applying the defense of assumption of the risk to any fact situation, the definition of the risk of harm is the critical element. It is apparent that an overly narrow view of risk could emasculate the entire concept. Similarly, too broad a definition could deny recovery. What is required is a definition of the risk of harm which comports with the proof and not just to part of the proof. The facts disclosed by the record in this case demonstrate a risk of harm far different from the risk defined by the majority opinion.
 
 
 14
 The meat given to Donald for grinding was in one large chunk weighing approximately one pound. While the size of the piece of meat was described as "two baseballs," no description was offered of the shape. Donald testified that his usual procedure was to place the meat in the funnel-shapped hopper with his left hand. He would then withdraw his hand and use the aluminum stomper provided by Sanitary. He stated that it was necessary to use his hand in the case of the grinding the larger chunks because the worm gear would not catch the meat otherwise.
 
 
 15
 At the time he was given the one-pound chunk of meat, he attempted his normal procedure. He forced the chunk into the hopper with his left hand. Donald testified that he did not insert his hand far enough to touch the worm gear when he was feeding the chunk into the grinder.[1]
 
 
 16
 When he felt the meat catch the worm gear, he attempted to withdraw his hand, but could not. Donald stated that his hand had not at that point contacted the worm gear. He stated on cross-examination that there was nothing on the meat with which his hand became entangled. His attempt to remove his hand by jerking did not succeed. Donald stated that his hand went down as the meat went down and yet he was unable to extricate his hand. The meat was being pulled into the worm gear. It is clear that his hand was being drawn into the worm gear. It is equally clear that his injury was not the result of a voluntary act. Thus the risk of harm was that the meat, having been caught by the gear, would draw or pull his hand into the gear and render him unable to remove it.
 
 
 17
 Restatement (Second) of Torts § 496D (1965) states: "[A] plaintiff does not assume a risk of harm arising from the defendant's conduct unless he knows of the existence of the risk and appreciates its unreasonable character." Whitley v. Philadelphia Transp. Co., 211 Pa.Super. 288, 234 A.2d 922 (1967), cites this section of the Restatement with approval. The Pennsylvania Supreme Court has said that the risk must be "glaringly obvious or patent," Cummings v. Borough of Nazareth, 427 Pa. 14, 22, 233 A.2d 874, 879 (1967).
 
 
 18
 "The standard to be applied is a subjective one, of what the particular plaintiff in fact sees, knows, understands and appreciates. * * * If by reason of age, or lack of information, experience, intelligence, or judgment, the plaintiff does not understand the risk involved in a known situation, he will not be taken to assume the risk. * * *" Restatement (Second) of Torts § 496D, Comment c (1965).
 
 
 19
 Turning to the facts of this case, we find that Donald Green was a 16-year old high school student at the time the injury occurred. He was employed in the grocery store on a part time basis, first as a delivery boy. Later, he was transferred to the meat department where his job was to wrap and package meat. He was not employed to grind meat and it was not part of his normal activity. His experience with the grinder was limited. During the two-year period of his employment, he had operated the grinder only about a dozen times. There was no evidence of any prior experience with similar machines. He was not instructed about the operation of the machine. Donald could offer no explanation of what occurred.
 
 
 20
 It is well to note that assumption of the risk is an affirmative defense. The burden of proof is on the defendant, Sarne v. Baltimore & O. R. Co., 370 Pa. 82, 87 A.2d 264, 270 (1952). In this case the defense presented no evidence. It relied on the testimony elicited on cross-examination.
 
 
 21
 From this record the conclusion is compelled that Donald was not aware of the risk that his hand would be drawn into the worm gear. He could not explain what occurred. This clearly negatives the idea that he subjectively knew of the risk and appreciated its character. Further, there is nothing in the record to demonstrate that such knowledge is imputable to a person of his background. He was a 16-year old boy of limited education and experience. On these facts he is not chargeable with knowledge of the risk. Accordingly, defendant was not entitled to an instruction, because the facts to support an inference of assumption of the risk simply were not present.
 
 
 22
 The majority characterize this analysis as "too finespun to apply to the everyday practical problems of negligence law," supra at 7. They would define the risk as the danger of inserting one's hand into the worm gear a, risk which Donald Green quite clearly understood and appreciated.
 
 
 23
 Such an approach accords little credence to the acknowledged distinction between the defenses of assumption of the risk and contributory negligence. It also pays too little attention to the procedural setting of the case. Further, it represents a misapplication of the doctrine of assumption of the risk.
 
 
 24
 The distinction between the defenses may be a nebulous one, but its existence has nevertheless been acknowledged as a part of Pennsylvania law: Pritchard v. Liggett & Myers Tobacco Co., 350 F.2d 479 (C.A.3, 1965), cert. denied, 382 U.S. 987, 86 S.Ct. 549, 15 L.Ed.2d 475 (1966), amended 370 F.2d 95 (C.A.3, 1966), cert. denied, 386 U.S. 1009, 87 S.Ct. 1350, 18 L.Ed.2d 436 (1967). Courts have had difficulty both in making the distinction and in applying the doctrine of assumption of the risk. Annot. 82 A.L.R.2d 1218 (1962). However, difficulty in comprehension and application is not a basis for abrogation.
 
 
 25
 Contributory negligence is based upon the concept of fault. It is conduct of the plaintiff which contributes to his injury when that conduct is tested by the objective standard of the reasonable man. Despite defendant's negligence, if the plaintiff is also found at fault, he is denied recovery.
 
 
 26
 Assumption of the risk relates to the subjective awareness by the plaintiff of a perceptible risk of harm. A person who perceives the risk or who, by reason of his background, should have perceived the risk is denied recovery when the risk comes to fruition resulting in injury. The effect of assumption of the risk is to extinguish the defendant's duty; it compels the conclusion that the defendant was not negligent. W. Prosser, The Law of Torts § 67 (3rd ed. 1964); F. Harper, Law of Torts §§ 10 & 130 (1933).
 
 
 27
 In the instant case the jury's finding necessarily forces the court to make the distinction. The jury specifically found that the plaintiff was not contributorily negligent. From this we must conclude that his conduct was not unreasonable and that his conduct did not contribute to his injury. By so finding, the jury foreclosed from our consideration any causally related conduct of the plaintiff.
 
 
 28
 If the risk were that of inserting one's hand into a meat grinder knowing with certainty that injury would result, and the plaintiff did that, then the court should have no difficulty concluding that he assumed the risk as a matter of law. Certainly, contributory negligence as a matter of law is also indicated. This is a situation where the concepts merge.
 
 
 29
 However, the proof indicated that Donald did not voluntarily insert his hand into the worm gear. Recognizing this, the majority state that it was a jury question to determine whether the act of placing one's hand in close proximity to the moving gear constituted assumption of the risk of voluntarily contacting the gear.
 
 
 30
 One might ask whether stepping in front of a moving train is the same as standing near the track or whether stepping off a cliff is the same as approaching the edge. How close is close? Clearly, different considerations must govern.
 
 
 31
 Add the fact that the operative force is one over which the actor has no control and the issue is presented in stark contrast: the train derails; the edge of the cliff shears off; or, meat pulls a hand into a meat grinder. The risk of harm presented by this case is different from that defined by the court.
 
 
 32
 If the actor is not cognizant of or chargeable with knowledge of the risk, he simply has not assumed it. Because the characterization of the risk by the majority does not recognize the operative force and the subjective awareness of the plaintiff which is demonstrated by this record, it is inaccurate. The doctrine has been misapplied.
 
 
 33
 Finespun such distinction may be, but if they are mandated by the law of the jurisdiction which we are required to apply, we cannot ignore them.
 
 
 34
 For the foregoing reasons, I respectfully dissent.
 
 
 35
 KALODNER, Circuit Judge, joins in this dissent.
 
 
 
 Notes:
 
 
 [1]
 Testimony of Donald R. Green — DIRECT EXAMINATION
 "Q. Do you recall on the specific night you were cutting [sic] meat whether your hand was able to remain above the top of the bell or collar here at such time as the meat made contact with the worm gear?
 "A. No.
 "Q. Your answer is, `No, I don't recall,' or `No' —.
 "A. No, it couldn't remain — my hand couldn't remain above the grinder itself, until it caught, because I laid it on the — and it didn't catch, so I had to hit down on it in order for it to go down in the machine."
 * * * * *
 "Q. * * * [W]ill you tell us to the best of your recollection what you recall happened that evening?
 "A. * * * I took the meat over to the grinder, and I placed it in the machine, as I usually do, and after feeling the meat catch into the gears, I went to remove my hand and it wouldn't come out.
 "Q. At that time did your hand feel as if it were caught in the mechanism?
 "A. No, sir."
 * * * * *
 CROSS-EXAMINATION
 "Q. * * * [T]here was nothing to prevent you from laying the meat in there and then forcing it down with this plunger, was there? Was there?
 "A. No, sir.
 "Q. And, of course, if you use the plunger you can't get your fingers caught, can you?
 "A. Well, I always did use the plunger.
 "Q. Well, this time you pushed it down with your fingers, obviously.
 "A. I always did before.
 "Q. * * * [D]o you know how deep you got your fingers in here?
 "A. Not offhand. I would only be guessing.
 "Q. Well, there was nothing on this piece of meat to grab hold of your hand, was there?
 "A. No."
 * * * * *
 "Q. * * * [T]here was no necessity for you to put your fingers down in; you could just put it on top — drop it on top, or drop it across the top, if you like — and force it down with the plunger; that is so, isn't it?
 "A. Yes, but often it doesn't catch when you force it down with the plunger.
 "Q. Well, if you force it down far enough, obviously it will catch.
 "A. It will slip over."
 * * * * *
 "Q. Well, Donald, it may sound like a silly question, but if you put your fingers down here far enough you are just bound to get them caught in the machine; isn't that a fact?
 "A. True.
 "Q. And you did that; isn't that right?
 "A. I wasn't aware how far I put my hand down into the machine.
 "Q. Well, I realize you didn't do it on purpose, but the reason — the reason that you had this unfortunate accident is that you put your hand too far down in the machine; isn't that a fact?
 "A. Yes, sir.
 * * * * *
 "Q. And, of course, you didn't lose your balance or anything; you just were standing there putting this meat in, and the next thing you knew your fingers were caught; right?
 "A. Yes, sir."
 * * * * *
 REDIRECT EXAMINATION
 "Q. Donald, when your hand was in the meat grinder and you attempted to pull it out, do you know how deep into this collar your hand was?
 "A. I would say not past the first — this here joint here — second joint of my hand.
 "Q. Do you know whether your hand — this is at the time you first were unable to pull your hand back, for whatever reason — do you know at that time whether your hand was down low enough in the machine to make contact with the worm gear?
 "A. I was positive it wasn't.
 "Q. It was not?
 "A. It was not.
 "Q. Was the meat below your fingers or were your fingers below the meat at that point?
 "A. My hand was sinking with the meat.
 * * * * *
 "Q. But you are sure your fingers had not made contact with the worm gear at the time your hand was first obstructed from removing it?
 "A. I am positive of that."