478 F.2d 313
 Fred GREEN, Administrator of the Estate of James Henry
Bruno, a/k/a Jaime Perez Bruno, Deceased, Appelant,
v.
Frank PARISI, Individually and as trustee for Dorothea Parisi et al.
Fred GREEN, Administrator of the Estate of James Henry
Bruno, a/k/a Jaime Perez Bruno, Deceased, Appellant,
v.
PHILADELPHIA GAS WORKS DIVISION OF the UNITED GAS IMPROVEMENT COMPANY.
 Nos. 71-2173, 71-2174.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 15, 1973.
Decided May 1, 1973.
 
 Gordon W. Gerber, Dechert, Price & Rhoads, Philadelphia, Pa., for appellant.
 James M. Marsh, John M. Fitzpatrick, Richard M. Rosenbleeth, Blank, Rome, Klaus & Comisky, Walter J. Timby, Jr., LaBrun & Doak, Philadephia, Pa., for appellees.
 Before ADAMS, ROSENN and HUNTER, Circuit Judges.
 OPINION OF THE COURT
 ROSENN, Circuit Judge.
 
 
 1
 These two consolidated appeals brought by Fred Green, administrator of the estate of James Henry Bruno, seek reversal of the judgments of the United States District Court for the Eastern District of Pennsylvania entered in favor of the three appellees-the Philadelphia Gas Works, Frank Parisi and John DeMarco.[1] Bruno died from serious burns suffered in an unfortunate explosion and fire occurring when he struck a match to light a gas burner in the kitchen of his rented home in Philadelphia.
 
 
 2
 Green brought suit under the Pennsylvania wrongful death and survivor statutes against the Philadelphia Gas Works, as supplier of natural gas to the Bruno home, Parisi, Bruno's landlord, and DeMarco, Parisi's real estate agent. Federal jurisdiction was based on diversity, and Pennsylvania substantive law applies. After a bifurcated trial, the jury returned verdicts in favor of all defendants. We have considered all trial errors alleged by appellant, and, finding them without merit, affirm the judgments of the district court.
 
 
 3
 At trial, two different theories of the cause of the explosion and fire were presented. Plaintiff's theory was that a natural gas leak in the connector pipe of the Brunos' gas range caused the conflagration. Plaintiff attempted to demonstrate that the negligence of the three appellees caused the gas leak. Defendants' theory, on the other hand, was that the explosion was caused by the existence in the kitchen of gasoline, which Bruno had been using to clean automobile parts. Alternatively, defendants contended, if the explosion had been caused by a natural gas leak, the decedent had assumed the risk of such an occurrence.
 
 
 4
 Appellant's primary contention of trial error is that, in the absence of any evidence indicating that decedent Bruno was aware of the dangers of a gas leak, the jury should not have been instructed that it could find he had assumed the risk of an explosion. Appellant emphasizes that there is no evidence in the record indicating that decedent was aware of the dangerousness of gas leaks or the existence of a foul smelling gas odor in his home, or, even if he was aware of the odor, that he knew it was natural gas which had explosive combustion potentialities. Appellant points out that Bruno was Puerto Rican, spoke only Spanish, and was not shown to have any special scientific expertise.
 
 
 5
 Appellees argue that the danger of gas leaks is an ordinary risk appreciated by the community in general, and that the jury was properly allowed to infer that Bruno was aware of the gas smell and of the accompanying risk. They point to the evidence at trial that other members of the Bruno family had smelled gas while living in the house for three months prior to the explosion. They emphasize that Bruno, a 37 year old man, had lived in the United States for fifteen years, was employed as a machinist, and was an amateur automobile mechanic.
 
 
 6
 The court's instruction to the jury on assumption of risk was:
 
 
 7
 If you find that Mr. Bruno subjectively knew, that is actually knew that there was the risk of an explosion or of a fire being caused by leaking gas, if he attempted to light the stove, but that nevertheless being aware of an obvious danger, took or assumed the risk of the explosion, and by so doing brought about the injury to himself, even though the precise extent of the injuries might not have been anticipated or known to him, he may not recover.
 
 
 8
 Assumption of risk, however, relates to a subjective awareness by the plaintiff of a perceptible risk of harm. I advise you, however, that both the possible defenses of contributory negligence and assumption of risk are what are known as affirmative defenses and as such the defendant has the burden of proof on those issues. That is the defendant or defendants asserting such a defense must prove by a preponderance of the evidence that Mr. Bruno himself was contributorily negligent, as I have defined this term to you, or being aware of the risk of harm voluntarily assumed the risk of harm, and that such contributory negligence or assumption of the risk contributed to the happening of the accident in a proximate way.
 
 
 9
 I further advise you that there is a presumption in law that a decedent was using due care at the time of his death and that he did not negligently or voluntarily bring about his own death, and that he took all normal and reasonable precautions to protect and preserve his life. Thus in the absence of substantive evidence to the contrary which overcomes by a preponderance of the evidence the presumption that the decedent was not contributorily negligent, this presumption would prevail and you would be justified in finding that the decedent was not contributorily negligent and that he did not voluntarily assume the risk of harm.
 
 
 10
 The charge is based on the principles stated in Restatement of Torts 2d Sec. 496 (1965). There is no dispute among the parties that the charge correctly stated the principles that assumption of risk depends on the subjective state of mind of decedent, that the burden of proving assumption of risk is on defendant, and that because of the presumption of due care given deceased persons, assumption of risk cannot be found unless there was substantive evidence rebutting due care. The dispute, therefore, is whether such substantive evidence existed to properly warrant the instruction given to the jury.
 
 
 11
 Since assumption of risk relates to the subjective awareness by a party of a perceptible risk of harm, direct proof of it is exceedingly difficult. Evidence that a party assumed a risk may, however, be inferred from surrounding circumstances; there need not be actual proof that he knew, understood or appreciated the risk. Restatement of Torts 2d Sec. 496D, Comment (d) (1965); Schentzel v. Philadelphia National League Club, 173 Pa.Super. 179, 96 A.2d 181, 186-187 (1953). In Schentzel, there was no direct evidence that plaintiff, a 47 year old woman, knew that baseball players hit foul balls which go astray and may injure spectators. The court, nonetheless, reversed a judgment in her favor, finding she must have assumed such a risk, because "she must be presumed to have been cognizant of the 'neighborhood knowledge' with which individuals living in organized society are normally equipped." 96 A.2d at 186.
 
 
 12
 Although most cases in which courts have allowed juries to infer knowledge of a dangerous risk have involved plaintiff spectators at, or participants in, sporting events, see Restatement of Torts 2d App. Sec. 496D, Comment (d); 149 A.L.R. 1174, 1177-1179; 142 A.L.R. 868, 874-877; 138 A.L.R. 540, 554-556; Watson v. Zanotti Motor Co., 219 Pa.Super. 96, 280 A.2d 670 (1971); the doctrine need not be limited to such cases. Juries have been allowed to draw inferences about the subjective knowledge of plaintiffs in products liability suits. In Green v. Sanitary Scale Co., 431 F.2d 371 (3d Cir. 1970), plaintiff was injured when his hand was drawn into a meat grinding machine. The district court refused to instruct on assumption of risk because plaintiff had testified that although he recognized the danger of putting his hand into the machine's gears, he was not aware of the danger involved in using his hand, instead of an aluminum stomper, to push the meat into hopper. We reversed, stating:
 
 
 13
 [I]n view of Green's testimony that he clearly understood the risk of putting his hand into the gear, it was for the jury to decide whether or not he must also have understood the obvious danger of placing his fingers too close to the gear, and also how far, in fact, he voluntarily put his fingers into the grinder before attempting to withdraw them. We would usurp the traditionally broad discretion of juries to apply their common sense were we to declare that a jury which has heard a party testify that he knew the danger of putting his hand in a moving gear was barred from drawing the inference that he also knew there was a risk in putting his hand too close to the gear, simply because he had not acknowledged that he was expressly aware of that extent of the risk.
 
 
 14
 431 F.2d at 374. See also Bartekewich v. Billinger, 432 Pa. 351, 247 A.2d 603, 606 (1968); Dorsey v. Yoder Co., 331 F.Supp. 753, 765-767 (E.D.Pa.1971) (although no assumption of risk was found, the issue was decided by the jury).
 
 
 15
 In the present case, there was evidence from which the jury could have concluded that Bruno was aware of the danger of leaking gas. Other members of his family had smelled the leaking gas and had been disturbed by it during their three month residence. It is a reasonable inference that the head of the family was also aware of the gas in his home and its dangerous propensities.[2] It was not necessary for the jurors to recognize a general community knowledge that leaking gas is dangerous in order to infer Bruno's knowledge; the inference could have been based on the knowledge and reactions of Bruno's own family. If the jury did rely on community knowledge, however, that would not have been error. The cases emphasize that the jury is to apply its own common sense when knowledge of a risk is widely known and appreciated. The dangers of leaking natural gas in a home would seem such a widely known risk.
 
 
 16
 Appellant argues that this court refused to allow juries to make inferences as to a plaintiff's knowledge of a risk when it affirmed the decision in Hennigan v. Atlantic Refining Co., 282 F.Supp. 667 (E.D.Pa.1967), aff'd per curiam, 400 F.2d 857 (3d Cir. 1968). In Hennigan, three workmen were killed by an explosion in a tunnel in which they were constructing a sewer. The cause of the explosion was established at trial to have been ignition of fumes, coming from crude oil which had leaked from a tank farm into the area of the tunnel, by sparks from various equipment in the tunnel. Special interrogatories were submitted to the jury asking it to determine whether the decedents had assumed the risk of the explosion. Upon various motions for judgment notwithstanding the verdict, the trial judge sustained the jury finding of no assumption of risk. In so doing, he said:
 
 
 17
 While the workmen may have smelled gas fumes and known that they became lightheaded or nauseous from working in the tunnel, there was no evidence that they knew or should have known (a) that the vapors were at or near the explosive limit; (b) that a random spark from any source could cause a flash fire and explosion, and (c) that the equipment being used was likely to create such a spark.
 
 
 18
 282 F.Supp. at 682.
 
 
 19
 The trial judge in Hennigan stated that if any error was made, it was in even allowing the jury to consider the assumption of risk issue. His statement that there was not sufficient evidence of the subjective states of mind of decedents to submit the issue to the jury was, however, dicta, as the issue had been submitted. Even this dicta does not conflict with the general principle that a jury will be allowed to infer knowledge of a risk. The only evidence presented in Hennigan bearing on decedents' mental state was that there was an odor of petroleum in the tunnel. There was no evidence that any man in the tunnel was aware, nor any general community knowledge for the court to take judicial notice of, that petroleum fumes in such circumstances were dangerous. In the present case, other residents of the Bruno household expressed an awareness of the danger of the leaking gas, and it is general community knowledge that gas leaking in a home is dangerous.
 
 
 20
 The district court was therefore correct in instructing the jury that it should not find appellees liable if it found Bruno had assumed the risk of lighting a match near leaking gas.
 
 
 21
 Appellant's second contention is that the jury should have been told explicitly that the Philadelphia Gas Works was negligent when it turned on the gas at the Bruno home if its employees had not followed company procedures. He contends the company manual, "Specifications for the Installation of Gas Piping and Domestic Appliances," which was in evidence, imposed a duty on the employees to follow certain procedures to check for gas leaks. This contention is without merit.
 
 
 22
 The evidence at trial disclosed that the manual referred to by appellant was for use of plumbers and appliance installers, not company servicemen. Because they lacked the familiarity with gas lines which company servicemen had, plumbers and appliance installers were instructed to complete slightly different and more extensive tests for gas leaks. It does not necessarily follow, therefore, that the failure of the Gas Works employee who turned on the Brunos' gas to follow the procedures in the "Specifications for the Installation of Gas Piping and Domestic Appliances" manual constituted negligence. The absence of an explicit reference in the instructions to the jury to this manual was therefore not error. The judge did instruct:
 
 
 23
 If the Gas Company . . . is in possession of facts which should reasonably inform it that it is unsafe, it then becomes the Gas Company's duty to investigate the safety of the pipe before it continues to use it for the transportation of gas.
 
 And, further:
 
 24
 But the Company knows that it is dealing with a dangerous agency, and if it knows or should have known that the customer's lines are not safe, it is then its duty to require the lines to be repaired or else shut off the gas. [Emphasis added.]
 
 
 25
 By telling the jury that the gas company is liable for repairing the gas line if it "should have known" of an unsafe gas line, the court properly instructed on the company's duty to police its lines. It was for plaintiffs to convince the jury that this duty was neglected when Bruno's gas was turned on.
 
 
 26
 Appellant's other contentions-(a) that he should have been allowed to read into evidence Interrogatory No. 10 and the answer of the Philadelphia Gas Works; (b) that the opinion testimony of Lt. William Shirar of the fire department, that the fire and explosion were "probably" caused by ignition of gasoline fumes, rather than of leaking gas, should have been ruled inadmissible; and (c) that errors were committed in the court's determination of what exhibits could be taken to the jury room-are all properly disposed of in the district court opinion. 333 F.Supp. at 1404-1407. We find the contentions without merit.
 
 
 27
 The judgments of the district court will be affirmed.
 
 ADAMS, Circuit Judge (dissenting):
 
 28
 In this case, in which a 37 year old Puerto Rican American was killed by an explosion while lighting his gas stove, the defendants interposed the defense of assumption of risk.[1] Since this is a diversity action, the law of Pennsylvania controls. Under Pennsylvania law the defense of assumption of risk is an affirmative one, and the burden of proof is on the party asserting it. The applicability of the assumption of risk defense depends upon the subjective knowledge of the injured party.[2]
 
 
 29
 Under these precepts, the defendants, to establish assumption of risk by the decedent, were required to demonstrate that Mr. Bruno placed himself in a position of danger, knowing full well that he was doing so. To prove this factual predicate, the defendants had to show (1) that Mr. Bruno knew there was a gas leak in the area where he sought to light the gas, and (2) that striking a match under such circumstances was dangerous.[3]
 
 
 30
 Although there was testimony that members of the Bruno household knew of the gas leak for some time, there was not one shred of evidence that Mr. Bruno was subjectively aware of the presence of any such leak. No testimony was adduced at trial that Mr. Bruno had been told about the gas leak by his family, or that he had talked to others about it, or that he had attempted to have the leak fixed. The absence of any evidence indicating that Mr. Bruno personally was aware of the gas leak is a fatal flaw in the defendants' assertion that Mr. Bruno assumed the risk of the explosion that killed him.
 
 
 31
 It would appear that the general rule requiring the defendants to prove by substantive evidence the injured party's subjective knowledge of the facts creating the risk of harm[4] precludes permitting the jury to infer that Mr. Bruno was aware of the gas leak merely because others in the household smelled the gas.
 
 
 32
 To fill this evidentiary gap, the majority cites cites cases in which various courts were faced with determining whether the injured party appreciated the risk of harm involved, the second element in the defense of assumption of risk. That issue would correspond in the present case to whether Mr. Bruno knew that lighting a match in the presence of a natural gas leak is dangerous. It would not correspond to the first element in the assumption of risk defense, whether Mr. Bruno was aware of the gas leak. None of these cases,[5] then, except perhaps Schentzel v. Philadelphia National League Club,[6] which we shall discuss separately, presented a problem concerning the injured party's subjective awareness of the facts creating the danger.
 
 
 33
 The majority also relies upon Comment (d), Restatement (Second) of Torts Sec. 496(D) (1965). That Comment, however, deals with whether the plaintiff's testimony concerning what he knew and understood is conclusive, not whether the jury may be permitted to infer what the plaintiff knew. In addition, the commentator is referring to the plaintiff's appreciation of the risk of harm, not his knowledge of the facts creating the danger.6a
 
 
 34
 As to the Schentzel case, although it is not clear whether the court was discussing the plaintiff's awareness of the facts creating the danger or her appreciation of the risk of harm, ample evidence may have existed for the jury to infer that Mrs. Schentzel was aware of the facts creating the hazards. The Pennsylvania Superior Court stated:
 
 
 35
 "It strains our collective imagination to visualize the situation of the wife of a man obviously interested in [baseball], whose children view the games on the home television set, and who lives in a metropolitan community, so far removed from [the knowledge that baseball spectators might be hit by foul balls] as not to be chargeable with it."
 
 
 36
 96 A.2d at 186.
 
 
 37
 Even assuming, however, that the Schentzel court would permit the jury to infer that Mrs. Schentzel was aware that baseballs were sometimes hit into the stands merely because the community generally possesses such knowledge, such ruling should be limited either to the facts of that particular case or to cases involving plaintiffs who are spectators at, or participants in, sporting events. Although the majority opinion states that "the doctrine need not be limited to such cases," the citations to support this contention would appear to be inapposite, as indicated in the margin. See note 5, supra. In addition, the Schentzel court itself relied exclusively upon "sports" cases, and Dean Prosser, for example, when discussing the doctrine followed in Schentzel adheres to this same pattern of examining the principle in the context of athletic contests.[7]
 
 
 38
 Moreover, assuming that Schentzel stands for the proposition for which it is cited by the majority-that the jury should be allowed to infer that the injured party knew the facts creating the danger merely because others do-limiting such a rule to the facts of that case or generally to cases involving sporting events is supported by logical and practical considerations.
 
 
 39
 The basic effect of the Schentzel court's opinion was to place upon the plaintiff, at a minimum, the burden of going forward with evidence that she either had poor eyesight or was unaware that baseballs are hit into the stands. Such a result is not unreasonable in view of the facts of that case. Whether Mrs. Schentzel was aware of the facts creating the risk of harm is a question touching upon her visual ability. She had attended a baseball game, which would seem fairly to suggest that she possessed at least adequate eyesight, and the court and jury could easily determine from in-court observation whether she had inadequate eyesight.
 
 
 40
 Also, to the extent that Schentzel may be thought to alter the rule that the assumption of risk depends upon the injured party's subjective knowledge, it should perhaps be viewed in light of the court's obvious unwillingness to believe that Mrs. Schentzel did not know that baseballs are hit into the stands and its willingness, under these circumstances, to place upon her, a living, injured plaintiff[8] who knew best what she can and did see, the burden of showing that she was unaware of the facts creating the danger. And, the alternative of placing such a burden upon the defendant may be considered unwise when the result would, in practical terms, mean that proprietors of sports establishments in order to limit their liability would then have to ask each entering patron whether he had ever witnessed such an event, and if not, whether he was aware of the facts creating the risk of harm.[9]
 
 
 41
 In the present case, unlike the situation in Schentzel, whether Mr. Bruno was aware of the gas leak depends upon his olfactory, not visual, ability. Nothing in the present case remotely suggests that he must have had an adequate sense of smell, and, because he was killed by the explosion, neither the court nor the jury was able to observe Mr. Bruno.[10] Placing upon the plaintiff the burden of showing that Mr. Bruno did not have an adequate sense of smell or did not smell the gas would seem to be unjustified when, as here, the plaintiff is not the injured party, but an administrator who may not possess any more information than the defendants concerning the decedent's knowledge of the facts creating the danger.
 
 
 42
 It would not appear inappropriate, under these circumstances, to require the defendants, in order to have the assumption of risk issue submitted to the jury, to adduce some evidence concerning Mr. Bruno's subjective knowledge of the gas leak in his kitchen. The alternative which the majority apparently adopts here is to impose upon the plaintiff the burden of showing that the decedent had a deficient olfactory capacity. This result might well undermine the principle, followed by the Pennsylvania courts, that the defendants have the burden of proving this affirmative defense.[11]
 
 
 43
 For the above reasons, I would reverse the judgments of the district court and remand for a new trial.[12]
 
 
 
 [1]
 The district court opinion denying a motion for a new trial is reported at 333 F.Supp. 1398 (E.D.Pa.1971)
 
 
 [2]
 Unlike the dissent, we have no problem with the submission to the jury under appropriate instructions of the question of whether Bruno was aware of the leaking gas. Trial testimony indicated that Mrs. Bruno, her mother, her brother, and a close friend had smelled gas in the house for about three months, from August 13 to November 5, with the smell being strongest in the kitchen. The record shows that Bruno's family was disturbed by it and was apparently aware of its dangers. Although there was no direct evidence that Bruno was aware of the gas smell, the jury could have inferred from the circumstantial evidence that Bruno, as head of the house, was also aware of it either because (1) he too smelled it, or (2) members of his family, since they were aware of its presence and were disturbed by it, told him about it
 Under Pennsylvania law, the burden to present an issue of fact to the jury may be fulfilled entirely by circumstantial evidence from which reasonable inferences are deducible. Hines v. Fanti, 374 Pa. 254, 97 A.2d 808 (1953); Smith v. Bell Telephone Co. of Pennsylvania, 397 Pa. 134, 153 A.2d 477 (1959); Weidemoyer v. Swartz, 407 Pa. 282, 180 A.2d 19 (1962). Circumstantial evidence of Bruno's knowledge was presented at trial here; we are unable to say that it would not have been a reasonable inference for jurors to determine that Bruno was aware of the gas smell. The dissent seems to suggest that defendants failed to meet the production burden because they did not elicit testimony from the witnesses that Bruno had been told of, or had acknowledged smelling, the gas. Such direct evidence of his awareness was not necessary to constitute a jury question, although its absence could certainly have been argued to the jury.
 
 
 [1]
 The defendants asserted the assumption of risk defense in the face of the plaintiff's theory that a natural gas leak caused the explosion. Defendants also offered the theory that the explosion was caused not by a natural gas leak but by gasoline which Mr. Bruno was using to clean automobile parts
 
 
 [2]
 Cummings v. Borough of Nazareth, 427 Pa. 14, 233 A.2d 874 (1967); Whitley v. Philadelphia Transp. Co., 211 Pa. Super. 288, 234 A.2d 922 (1967); Restatement (Second) of Torts Sec. 469D, comment c (1965)
 
 
 [3]
 Restatement (Second) of Torts Sec. 469D, comment b (1965)
 
 
 [4]
 Id. See Colosimo v. May Dept. Store Co., 325 F.Supp. 609, 611 (W.D.Pa.1971), rev'd on other grounds, 466 F.2d 1234 (3d Cir. 1972); Stark v. Lehigh Foundries, Inc., 388 Pa. 1, 130 A.2d 123, 127-128 (1957); cf. Whitley v. Philadelphia Transp. Co., 211 Pa.Super. 288, 234 A.2d 922 (1967)
 
 
 [5]
 In Green v. Sanitary Scale Co., 431 F.2d 371 (3d Cir. 1970), the plaintiff was aware of the facts creating the risk of harm to him; the principal question faced by this Court was whether he appreciated one danger ("placing his fingers too close to the gear") as opposed to a different danger ("putting his hand into the gear"). Bartekewich v. Billinger, 432 Pa. 351, 247 A.2d 603 (1968), was a products liability case under Sec. 402A of Restatement (Second) of Torts, in which it was necessary to determine whether the defendant's glass-breaking machine was defectively designed. The court inquired into whether the defendant should have foreseen the possibility that workers might place themselves in "an obviously dangerous position." Id. at 606. It did so, however, only for the purpose of deciding whether the defendant violated Sec. 402A (whether this was the kind of risk he should have guarded against), and not for determining whether he could properly defend on an assumption of risk theory
 The court in Dorsey v. Yoder Co., 331 F.Supp. 753 (E.D.Pa.1971) (products liability) focused upon whether the plaintiff "appreciated the risk of his actions." Id. at 765. There was no question that the plaintiff "knew about the existence of a danger. . . ." Id.
 Similarly, in Hennigan v. Atlantic Refining Co., 282 F.Supp. 667 (E.D.Pa. 1967), aff'd per curiam, 400 F.2d 857 (3d Cir. 1968), the trial judge discussed only the absence of evidence that the plaintiffs "appreciate[d] the danger itself and the nature, character and extent which made it unreasonable. . . .' " Id., quoting Restatement (Second) of Torts, Sec. 496(d), Comment (b) (1965).
 In Watson v. Zanotti Motor Co., 219 Pa.Super. 96, 280 A.2d 670 (1971), the lower court dismissed the complaint on the ground that the plaintiff must have known of the obvious dangers of snowmobiles and therefore, had assumed the risk as a matter of law. The Superior Court reversed because "in the procedural posture of this case the allegations in the complaint that appellant knew nothing about snowmobiles or the presence of the ice patches must be taken as true." Id. at 672. Under these circumstances, the case would not appear to lend support to the proposition for which it is cited by the majority.
 
 
 [6]
 173 Pa.Super. 179, 96 A.2d 181, 186-187 (1953)
 6a Restatement (Second) of Torts Sec. 496 (D) Comment (d) (1965).
 
 
 [7]
 See W. Prosser, Law of Torts 460, 463 & n. 9 (3d ed. 1964). It is also interesting to note that Professor Prosser appears to discuss the doctrine in the context of whether the injured party appreciates the danger, not whether he knew the facts creating the danger
 "Implied assumption of risk has been found in a variety of cases. . . . By entering freely and voluntarily into any relation or situation which presents obvious danger, the plaintiff may be taken to accept it. . . . Thus those who participate or sit as spectators at sports or amusements may be taken to assume all the known risks of being hurt. . . .
 "On the same basis, plaintiffs who enter business premises as invitees and discover dangerous conditions . . . may be found to assume the risk when they nevertheless proceed to encounter them. The guest who accepts a ride with an automobile driver may assume the risk of his known incompetence . . . or of known defects in the car. Likewise the user of a product supplied to him may assume the risks of its known dangerous defects." Id., at 459-461 (emphasis supplied, footnotes omitted).
 It is significant that the above discussion by Dean Prosser occurs under the heading "Implied Acceptance of Risk" and not under the next heading of his treatise which is entitled "Knowledge of Risk."
 
 
 [8]
 It may be pertinent, though not squarely on point, that in a wrongful death action Pennsylvania law creates a presumption that the decedent exercised due care. See Laubach v. Haigh, 433 Pa. 487, 252 A.2d 682 (1969); Bragdon, Admr. v. Pittsburgh Railways Co., 375 Pa. 307, 100 A.2d 378 (1953). Although this rule would seem to apply more logically to the defense of contributory negligence, than to the typical assumption of risk defense, it may be thought to reflect a general principle of not placing the burden of proof on similar issues upon the party representing the decedent's interest
 
 
 [9]
 See Ingersoll v. Onondaga Hockey Club, 245 App.Div. 137, 281 N.Y.S. 505
 
 
 [10]
 Cf. note 8 supra and accompanying text
 
 
 [11]
 Sarne v. Baltimore & O. R. Co., 370 Pa. 82, 87 A.2d 264, 270 (1952)
 
 
 [12]
 A new trial would be necessary since the jury in finding for the defendants may have done so because of the theory that the explosion was caused by gasoline Mr. Bruno had been using to clean automobile parts, see note 1, supra, and not because they accepted the defendants' assumption of risk theory