Margaret H. BERTLES

v.

William E. GUEST and William E. Guest,
t/a William E. Guest Excavation, and
Giles & Ransome, Inc., and Caterpillar
Tractor Company, and Interstate Safety
Service.

Civ. A. No. 76–3584.

United States District Court,
E. D. Pennsylvania.

Oct. 1, 1979.

Thomas E. Timby, Timby and Dillon, P.
C., Newtown, Pa., for plaintiff.

William J. McKinley, Jr., Swartz, Camp-
bell & Detweiler, Philadelphia, Pa., for de-
fendant Guest.

Theodore W. Flowers, White & Williams,
Philadelphia, Pa., for Caterpillar.

Daniel J. Ryan, LaBrum & Doak, Phila-
delphia, Pa., for defendant Giles & Ran-
some.

John P. Penders, Marshall, Dennehey &
Warner, Philadelphia, Pa., for defendant
Interstate Safety Service.

## MEMORANDUM

RAYMOND J. BRODERICK, District
Judge.

Plaintiff, Margaret Bertles, instituted
this action for damages against defendants
William E. Guest, Giles & Ransome, Inc.,
Caterpillar Tractor Company, and Inter-

state Safety Service,[1] for injuries that she received when she drove her Volkswagen into the rear of a 235 Caterpillar excavator on the night of October 3, 1975. The case, which was based on diversity jurisdiction, was tried before a jury from May 17, 1978 to June 6, 1978. The jury answered interrogatories that resulted in a verdict in favor of the defendants. Plaintiff subsequently filed motions for a judgment n. o. v. with respect to defendant Guest and for a new trial as to all defendants. After carefully considering all of the grounds alleged by the plaintiff, this Court has determined that it will grant plaintiff's motions for a new trial as to defendants Caterpillar and Giles & Ransome, Inc., but must deny plaintiff's motions for a judgment n. o. v. and new trial as to defendant Guest.

The plaintiff was driving her Volkswagen on Lakeland Avenue in Bristol Township, Bucks County, Pennsylvania. The defendant Guest was a contractor engaged in installing a sewer line along Lakeland Avenue. Guest had leased a 235 Caterpillar excavator from Giles & Ransome, Inc., and was using the Caterpillar to excavate and backfill the sewer line. Plaintiff contended at trial that defendant Guest was negligent in leaving the excavator, without adequate warnings, at the excavation site over a weekend, and that defendants Giles & Ransome, Inc. and Caterpillar Tractor Company, the manufacturer of the excavator, were strictly liable under section 402A in that the 235 Caterpillar was defectively designed since it did not have lights or reflectors on the rear, an ICC bar, or an energy-absorption device. Defendant Guest claimed that he was not negligent, that plaintiff was contributorily negligent, and that plaintiff had assumed the risk. Defendants Giles & Ransome, Inc. and Caterpillar asserted that the excavator was not defectively designed and that plaintiff had assumed the risk.

Motions for a new trial require the exercise of discretion by the Court, whose "duty is essentially to see that there is no miscarriage of justice." 6A *Moore's Federal Practice* ¶ 59.08[5], at 59–160 (footnote omitted) (2d ed. 1974); *Thomas v. E. J. Korvette, Inc.*, 476 F.2d 471, 474–75 (3d Cir. 1973). The jury's verdict may be set aside only if manifest injustice will result if it were allowed to stand. The Court may not substitute its own judgment for that of the jury merely because the Court may have reached a different conclusion. To grant a motion for judgment n. o. v., the Court must find as a matter of law that the plaintiff failed to adduce sufficient facts to justify the verdict. *Neville Chemical Co. v. Union Carbide Corp.*, 422 F.2d 1205, 1210 (3d Cir.), *cert. denied*, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970). Such a motion "may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment." 5A *Moore's, supra*, ¶ 50.07[2], at 50–77 (footnote omitted). *Korvette, supra*, at 474.

### I. *Defendant Guest.*

The jury answered "yes" to the following interrogatories as to the defendant Guest.

1. Do you find by a preponderance of the evidence that the defendant, William Guest, was negligent?

2. Do you find by a preponderance of the evidence that William Guest's negligence (upon which you based your answer of "yes" to question No. 1) was a proximate cause of the accident?

As to the plaintiff, Margaret Bertles, the jury answered "no" to the following interrogatory.

3. Do you find from a preponderance of the evidence that the plaintiff, Margaret Bertles, was negligent?

As to the plaintiff, however, the jury answered "yes" to the following interrogatory.

5. Do you find from a preponderance of the evidence that the plaintiff, Margaret Bertles, assumed the risk in connection with the negligence of defendant,

---

1. Motion for directed verdict entered in favor of defendant Interstate Safety Service against the plaintiff Margaret H. Bertles.

William Guest, which you found to be a proximate cause of the accident?

A. *Motion for judgment n. o. v. as to Guest.*

■ Bertles' motion for a judgment n. o. v. as to defendant Guest is based upon her assertion that there was insufficient evidence from which the jury could reasonably find that she had assumed the risk of defendant Guest's negligent action. Plaintiff correctly contends that it is necessary for one to be subjectively aware of a risk before it can be assumed. She also contends, however, that the testimony at trial was such that a jury could not reasonably infer that she knew of the excavator's presence on the road.

Our Third Circuit, in interpreting Pennsylvania law, has stated that although

assumption of risk relates to the subjective awareness by a party of a perceptible risk of harm, direct proof of it is exceedingly difficult. Evidence that a party assumed a risk may . . . be inferred from surrounding circumstances; there need not be actual proof that . . [the plaintiff] knew, understood or appreciated the risk.

*Green v. Parisi*, 478 F.2d 313, 315 (citations omitted) (3d Cir. 1973). *See Schell v. AMF, Inc.*, 567 F.2d 1259 (3d Cir. 1977); *Green v. Sanitary Scale Co.*, 431 F.2d 371 (3d Cir. 1970). *See also Kashner v. The Warner & Swasey Co.*, No. 73–1601 (E.D.Pa. June 7, 1978). Our Third Circuit in *Parisi* also recognized and upheld the traditionally broad discretion of juries to weigh the evidence and determine whether or not a plaintiff had assumed the risk. *See Schell, supra; Sanitary Scale Co., supra.* Comment *e* to section 496D of the *Restatement (Second) of Torts* (1965) is particularly instructive in this regard. It states:

Whether the plaintiff knows of the existence of the risk, or whether he understands and appreciates its magnitude and its unreasonable character, is a question of fact, usually to be determined by the jury under proper instructions from the court. The court may itself determine

the issue only where reasonable men could not differ as to the conclusion. Judge Cahn, following these principles, stated in *Kashner, supra*, that

the plaintiff's uncontradicted testimony that he was unaware of any danger is not conclusive because the jury may draw reasonable inferences of perception, appreciation and knowledge of danger from all the evidence in the case including plaintiff's background, the manner in which the accident happened and the obviousness of the danger. *Id.* slip op. at 8.

■ A review of the evidence presented to the jury in a light most favorable to defendant Guest, *see Korvette, supra*, reveals an abundance of evidence that clearly supports the jury's finding that Bertles assumed the risk of the injury she incurred. Guest was under contract with the Bucks County Housing Authority to construct a sewer line on Lakeland Avenue, and had begun construction in early September of that year. Guest had leased the excavator at that time to dig the sewer trench in the various parts of the road. At the end of each working day, the excavator was parked at the end of the exposed ditch with the boom extended and lowered into the exposed portion of the ditch in order to prevent persons or vehicles from falling into the exposed portion of the ditch.

On the night of October 3, 1975, at approximately 8:30 p. m., plaintiff made a left hand turn from Beaverdam Road onto Lakeland Avenue. She drove in a southerly direction along Lakeland Avenue and drove into the rear of the 235 Caterpillar, which had been parked at the right hand curb of Lakeland Avenue. In this position, the eleven foot wide excavator extended slightly beyond the center of the twenty-four foot wide road. The excavator was parked approximately 1000 feet from Beaverdam Road and, from the perspective of the plaintiff, the road approaching the 235 Caterpillar was straight and slightly inclined. Guest had placed a "road closed" sign at each end of Lakeland Avenue when he began the excavation, and those signs remained posted on the night of the accident.

In addition, Guest testified that several "Type 1" barricades were placed around the excavator. Each of the barricades had a flashing light which was photosensitive and was automatically triggered by the onset of darkness. There were two lighted street lights in the area of the excavator, one approximately sixty feet to the front and the other approximately 100 feet to the rear. The weather was clear and dry.

Bertles testified that she frequently traveled on Lakeland Avenue, that she knew construction was in progress on the road, that "road closed" signs had been posted, and that heavy excavation equipment was being used on the road. Such testimony, together with other evidence in the record, provides ample support for the jury's finding that the plaintiff Bertles assumed the risk.

■ Bertles also argues that Interrogatory No. 5, submitted to the jury in connection with assumption of risk, was highly prejudicial since it was not drafted in terms of the plaintiff's subjective knowledge of the risk. We must reject this contention. Our charge to the jury on assumption of risk clearly emphasized the subjective nature of assumption of risk when we stated to the jury:

> The standard to be applied in connection with assumption of risk is what we call a subjective one, what that particular plaintiff, in fact, sees, knows, understands and appreciates.
>
> If by reason of age or lack of information, experience, intelligence, or judgment, the plaintiff does not understand the risk involved in a known situation, she will not be taken to assume the risk.
>
> If you conclude that the accident happened because of the plaintiff's mere inadvertence, momentary inattention, or diversion of attention, or if you conclude that the plaintiff was not aware of the danger involved you should find that she did not assume the risk.
>
> However, if you find that she was aware of the danger involved and voluntarily proceeded to encounter the danger, you may find that she did assume the risk. (N.T. 12–115).

B. *Motion for a New Trial as to Guest.*

■ The crux of Bertles' motion for a new trial as to Guest is that the 235 Caterpillar was a vehicle under the Pennsylvania Vehicle Code, 75 *Pa.Cons.Stat.Ann.* §§ 101 *et seq.* (Purdon 1977) (Vehicle Code), and that it did not comply with the lighting requirements for vehicles under the Vehicle Code. Bertles maintains that the failure of the excavator to have the lighting required by the Vehicle Code was negligence per se, and that the Court should have so charged the jury.

This issue was researched during the trial and the Court ruled that the 235 excavator was not a vehicle as defined in the Vehicle Code. At the time of the accident, the Vehicle Code (*Pa.Stat.Ann.* tit. 75, § 102 (Purdon 1971) (repealed)) defined a "vehicle" as follows: "Any device in, upon or by which any person or property is or may be transported or drawn upon a public highway, excepting tractors, agricultural machinery, devices moved by human power or used exclusively upon stationary rails or tracks." No regulation or court decision was called to our attention which was in any way relevant to a determination as to whether section 102 was applicable to a 235 Caterpillar. The Court stated on the record (N.T. 11–58) several reasons for its ruling that the 235 Caterpillar was not a vehicle within the above quoted definition. As we pointed out, it is not a "device in, upon or by which any person or property may be transported or drawn upon a public highway." Moreover, it is obvious that it would not be used to transport either people or property on a highway because, as the excavator was described in the record, it ran on tracks that would dig up a highway. The only way this excavator could be transported on a public highway was on a flatbed truck or tractor. The Court found additional support for its ruling from the fact that the Vehicle Code was amended shortly after the time of the accident to create a special classification, not mentioned in the 1959 Vehicle Code, entitled "Special mobile

equipment". Special mobile equipment is defined as follows:

[V]ehicles *not* designed or used primarily for the transportation of persons or property and only incidentally operated or moved over a highway, including but not limited to: *ditch digging apparatus,* well boring apparatus, earth moving and road construction and maintenance machinery, such as asphalt spreaders, bituminous mixers, bucket loaders, snowplows, ditchers, graders, finishing machines, road rollers, scarifiers, earth moving carryalls, scrapers, power shovels, and drag lines; and self-propelled cranes and tractors, other than truck tractors. The term does not include house trailers; dump trucks, truck-mounted transit mixers, cranes or shovels; or other vehicles designed for the transportation of persons or property to which machinery has been attached. 75 *Pa.Cons.Stat.Ann.* § 102 (Purdon 1977) (emphasis added).

It is therefore clear that under the above quoted language of the present Vehicle Code, the excavator is not a vehicle. It is also interesting to note that the present Vehicle Code defines the term "vehicle" in the exact language used in the 1959 Vehicle Code with the exception that some of the excluding language has been omitted. The conclusion is therefore obvious that the excluding language in the 1959 Vehicle Code is now encompassed in the present Vehicle Code under the definition of "Special mobile equipment."

While we have not discussed every contention that was briefed, we have, however, reviewed the record and considered all of the grounds alleged by the plaintiff in her motions for a new trial and judgment n. o. v. against defendant Guest, and we hold that none of them, either singly or collectively, has sufficient substance to merit any further discussion as a basis for granting a new trial or judgment n. o. v. against defendant Guest.

## II. *Defendants Giles & Ransome, Inc., and Caterpillar.*

█ One ground of Bertles' motion for a new trial as to Giles & Ransome, Inc., and Caterpillar is that the Court committed reversible error in using the words "unreasonably dangerous" in its charge to the jury in connection with the plaintiff's 402A claims. The Court did charge the jury that a verdict for the plaintiff with respect to these defendants must be based upon a finding that the 235 Caterpillar was "defectively designed and unreasonably dangerous." N.T. at 12–19. In addition, Interrogatory No. 1 with respect to these defendants stated: "Do you find by a preponderance of the evidence that the 235 Caterpillar was defectively designed making it unreasonably dangerous for its intended purpose, and that it was not substantially changed?"

Plaintiff bases her assertion of reversible error on *Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 337 A.2d 893 (1975). In *Berkebile,* the Supreme Court of Pennsylvania held that the plaintiff was entitled to a new trial because the words "unreasonably dangerous" had been used in the jury charge on the plaintiff's 402A claim. Our Third Circuit, however, refused to accept *Berkebile* as Pennsylvania law because the opinion was not a majority opinion. In *Bair v. American Motors Corp.,* 535 F.2d 249 (3d Cir. 1976) (per curiam), the Court held that *Berkebile* was not the law of Pennsylvania, and that it was proper to instruct a jury that it must find the defect "unreasonably dangerous." *Id.* at 250, *quoting Beron v. Kramer-Trenton Co.,* 402 F.Supp. 1268 (E.D. Pa.1975), *aff'd mem.,* 538 F.2d 318 (3d Cir. 1976).

Four months after the verdict in this case, the Supreme Court of Pennsylvania in *Azzarello v. Black Brothers Co.,* 480 Pa. 547, 391 A.2d 1020 (1978), made it abundantly clear that under Pennsylvania law a charge to the jury bottomed on the "unreasonably dangerous" language of section 402A was reversible error. Although *Azzarello* was not decided until four months after the charge to the jury in this case, the plaintiff, Bertles, is entitled to a new trial as to Giles & Ransome, Inc. and Caterpillar. *Baker v. Outboard Marine Corp.,* 595 F.2d 176 (3d Cir. 1979). As was pointed out by Judge Hunter in *Baker,* the United States Su-

preme Court, in *Vandenbark v. Owens-Illinois Co.*, 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1941), "recognized explicitly that the result of this rule would be that '[i]ntervening and conflicting [state court] decisions will thus cause the reversal of judgments which were correct when entered.'" 595 F.2d at 182, *quoting Vandenbark v. Owens-Illinois Co.*, 311 U.S. 538, 543, 61 S.Ct. 347, 350, 85 L.Ed. 327 (1941). Therefore, although the Court's "unreasonably dangerous" charge was correct when given, it is now reversible error and the plaintiff will receive a new trial.